**In re Charles KASSICIEH, Debtor.**

**Charles Kassicieh, Plaintiff,**

v.

**Eugene F. Battisti, Jr., Defendant.**

**Bankruptcy No. 07–54523.**
**Adversary No. 08–2250.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

April 2, 2010.

---

Michael T. Gunner, Hilliard, OH, for Debtor.

Frank M. Pees, Worthington, OH, Trustee.

### MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT UNDER 11 U.S.C. § 523(a)(5)

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

Section 523(a) of the Bankruptcy Code provides that an individual will not receive a discharge from any debt for a domestic support obligation. 11 U.S.C. § 523(a)(5). The definition of the term "domestic support obligation" was added to the Code in new subsection § 101(14A) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Under the express language of § 101(14A), a debt must be "owed to or recoverable by" a person or entity identified in that section to constitute a domestic support obligation. The question before the Court is whether a debt payable to a guardian ad litem—a person who is not one of the payees expressly listed in § 101(14A)—may be excepted from discharge under § 523(a)(5).

On June 12, 2007, Charles Kassicieh ("Kassicieh" or "Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On August 18, 2008, Kassicieh commenced this adversary proceeding, by which he seeks a determination that his debts owed to Eugene F. Battisti, Jr. ("Battisti") for fees incurred as the guardian ad litem ("GAL") appointed in the state court custody proceedings between Kassicieh and Ann Mascotti ("Mascotti") are dischargeable. Kassicieh asserts that the fees do not constitute a domestic support obligation because the fees are owed to a third party and not "owed to or recoverable by—(i) a spouse,

former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative...." 11 U.S.C. § 101(14A)(A)(i). Thus, he contends, the GAL fees do not fall within the ambit of § 523(a)(5)'s exception to discharge.

For the reasons explained below, the Court will withhold its ruling on the issue of whether Kassicieh's debt to Battisti qualifies as a domestic support obligation under § 101(14A) pending a final order by the domestic relations court (1) stating the total dollar amount to be paid the GAL and (2) directing whether and in what amounts or percentages the Debtor and/or Mascotti are to pay that amount (i.e., allocating an amount to each party, imposing joint and several liability, etc.).

## I. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## II. Factual and Procedural Background

### A. The State Court Custody Case

Kassicieh and Mascotti met in 1989. They shared a residence and had two children, but never married. On August 24, 2000, Kassicieh filed a complaint with the Court of Common Pleas for Franklin County, Ohio (Division of Domestic Relations/Juvenile Branch) ("State Court"), commencing a case in which he sought a judgment awarding him custody of the children ("Custody Case"). By order entered September 20, 2000, the State Court appointed Battisti as guardian ad litem in the Custody Case. *See* Stipulation as to Relevant Orders, Ex. A. ("GAL Order") (Doc. 18). The GAL Order required the Debtor to deposit $600 and Mascotti to deposit $200 with Battisti. *See* GAL Or-

der at 1. The GAL Order also provided that "[t]he Guardian ad Litem fees are in the nature of child support for the purposes of dischargeability in bankruptcy." *Id.* at 2. Both parties were represented by counsel who affixed their signatures to the GAL Order. *See id.*

The parties were involved in prolonged litigation in the Custody Case. The custody proceedings went before the State Court magistrate beginning February 14, 2002 and were concluded on October 28, 2002. The magistrate entered a decision on December 18, 2003, on various motions to determine custody, modify parental rights and allocate and modify support payments. *See* Stipulation as to Relevant Orders, Ex. B ("State Court Decision") at 1–2. The State Court Decision adjudicated the parties' cross-objections to the magistrate's decision. Although the parties did not provide a copy of the magistrate's decision, the State Court Decision, which sustained the magistrate's decision, *see id.* at 16, summarizes the terms of, among other things, custody, support and visitation. *See id.* at 2–6. As to the GAL fees, the magistrate ruled that each party would pay all balances due Battisti. *See id.* at 5. Kassicieh argued that the "magistrate erred when he failed to reallocate the guardian's fees." *Id.*

The court failed to address the allocation of GAL fees in the State Court Decision, and Kassicieh filed an appeal asserting that "[t]he trial court abused its discretion by failing to allocate or reallocate the guardian's fees between the parties on an equitable basis." Stipulation as to Relevant Orders, Ex. C, Opinion ("Appellate Decision") of the Court of Appeals for the Tenth Appellate District ("Court of Appeals") at 2. In its Opinion, the Court of Appeals made the following statement pertaining to the GAL fees:

Upon review of the record, it appears Kassicieh is correct that there is not a judgment by the court indicating either the total dollar amount to be paid to the GAL, or the amount to be paid by each party. Therefore, Kassicieh's single assignment of error is sustained, and this matter is remanded to the trial court for a determination of the total amount of GAL fees to be paid and the amount to be paid by each of the parties.

Appellate Decision at 6. To date, it appears that the State Court has made no allocation of the GAL fees between the Debtor and Mascotti, nor any determination of the total amount of GAL fees to be paid.

## B. The Bankruptcy Proceedings

Battisti filed a proof of claim on October 24, 2007 (Claim No. 16), asserting an unsecured, priority claim in the amount of $55,135.09. On November 26, 2007, Kassicieh filed an objection to Battisti's claim, contending that it was not entitled to priority treatment and that it was tardily filed (Doc. 38). Battisti did not file a response. The Court sustained the objection by order entered on January 10, 2008 (Doc. 43) and allowed the claim to be treated as an unsecured, late-filed claim.

The adversary proceeding was commenced by the filing of a complaint (Adv. Doc.1). Battisti filed an answer (Adv. Doc.5), and the Court set a pretrial conference for November 5, 2008. At the pretrial conference, the parties requested that the matter be scheduled for mediation and, on February 5, 2009, the Court entered an Order Requiring Mediation and Establishing Procedures (Adv.Doc.12). The mediation was originally set for February 27, 2009, but was continued to May 8, 2009 by agreement of the parties. On May 13, 2009, the mediator filed a report with the Court indicating that the parties were unable to reach a settlement (Adv.Doc.16). Thereafter, the Court conducted a telephonic status conference, and the parties submitted an agreed order (Adv.Doc.19) ("Agreed Order") detailing a briefing schedule and narrowing the issue for determination to the question of whether a debt owed to a guardian ad litem may qualify as a domestic support obligation even though a guardian ad litem is not one of the persons identified in § 101(14A). The parties also stipulated to the following facts in the Agreed Order: (1) "[t]he [GAL Order] appointing Eugene Battisti as Guardian Ad Litem for the minor children of Dr. Kassicieh intended to create a support obligation[,]" Agreed Order ¶ 1; and (2) "[t]he obligation to a Guardian Ad Litem has the effect of providing support, according to the majority of case law in the Sixth Circuit ... [,]" Agreed Order ¶ 2. Both parties submitted briefs on the narrow issue framed by the Agreed Order. *See* Adv. Docs. 21, 22 & 23.

## III. Arguments of the Parties

Kassicieh asserts, based on the plain language of the statute, that a domestic support obligation is only excepted from discharge when it is "owed to or recoverable by" a spouse, former spouse or child of the debtor, or that child's parent, legal guardian or responsible relative. 11 U.S.C. § 101(14A)(A)(i).[1] Because the list of individuals in § 101(14A)(A)(i) does not include a guardian ad litem, Kassicieh contends, the debt to Battisti is not a domestic support obligation that is excepted from discharge by § 523(a)(5). Kassicieh relies primarily on *Levin v. Greco (In re Greco)*,

1. Neither party argues that a guardian ad litem is a "legal guardian" or "governmental unit" under § 101(14A)(A).

397 B.R. 102 (Bankr.N.D.Ill.2008), in support of his position.[2]

Battisti contends that BAPCPA made no meaningful substantive changes to the Code's dischargeability provision governing support obligations, asserting that § 101(14A)'s language is not materially different from that contained in former § 523(a)(5). According to Battisti, the vast majority of the cases that have analyzed the dischargeability of guardian ad litem fees (both before and after BAPCPA's enactment), have found that the identity of the payee is not outcome-determinative. He relies primarily on pre-BAPCPA case law holding that the nature of the debt—whether it is or is not determined to be a support obligation—rather than the identity of the payee controls the question of dischargeability. Battisti further argues that the list of persons contained in § 101(14A)(A)(i) is largely the same group of payees enumerated in former § 523(a)(5) and, thus, the Court should be guided by existing caselaw, which overwhelmingly holds that guardian ad litem fees are nondischargeable. Finally, Battisti asserts that public policy dictates a finding that guardian ad litem fees are excepted from discharge as a domestic support obligation because holding otherwise would have a chilling effect on the willingness of prospective guardians ad litem to serve in that capacity and thus hinder domestic relations courts in their efforts to protect the interests of children.

## IV. Legal Analysis

Section 1328(a) of the Code provides that a Chapter 13 debtor shall receive a discharge "of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—... (2) of the kind specified ... in paragraph ... (5) ... of section 523(a)[.]" 11 U.S.C. § 1328(a)(2). Section 523(a)(5) states that "[a] discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt—... (5) for a domestic support obligation[.]" 11 U.S.C. § 523(a)(5). The Code defines "domestic support obligation" in § 101(14A) as follows:

[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

---

**2.** The Court notes, however, that since the filing of briefs in this case, the District Court for the Northern District of Illinois has reversed the bankruptcy court's decision in *Greco*. *See Levin v. Greco*, 415 B.R. 663 (N.D.Ill. 2009).

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for purposes of collecting the debt.

11 U.S.C. § 101(14A).

A review of both pre-and post-BAPCPA case law interpreting former and current § 523(a)(5) reveals that three lines of authority have emerged on the question of whether a debt that is in the nature of support and owed directly to a third party not listed among the entities identified in § 101(14A) (or former § 523(a)(5)) is excepted from discharge. These three lines are: (1) the "plain-meaning" approach, holding that the dischargeability of the debt turns on whether it is owed to a person/entity described in § 523(a)(5) (pre-BAPCPA) or payable to or recoverable by a person/entity described in § 101(14A) (post-BAPCPA); (2) the view that, if a debt is in the nature of support, it is nondischargeable even if payable directly to a third party and even if the debtor's spouse, former spouse or parent of his/her child would not be financially harmed if the debtor discharged the obligation; and

(3) a more limited approach that requires some ongoing liability of the debtor's spouse, former spouse, or parent of the debtor's child on the support obligation owing to a third party (so that its non-payment might have a financial impact on those parties) before it may be excepted from discharge.

## A. Decisions Strictly Adhering to the Plain Meaning of the Code

Kassicieh urges the Court to hold that the GAL fees in this case are dischargeable based on the plain language of § 101(14A) because the fees are not "owed to or recoverable by" any party listed in that section.[3] The case upon which Kassicieh principally relies is the bankruptcy court's decision in *Greco*, where the debt at issue was owed to a "child representative," as defined under Illinois law. The debtor had agreed to pay the plaintiff, as part of a divorce settlement, approximately $9,000 for his work as the child representative. *Greco*, 397 B.R. at 105. The plaintiff filed a complaint requesting a determination that the debt was nondischargeable under § 523(a)(5) as a domestic support obligation. The defendant did not answer, and the plaintiff filed a motion for default judgment. In considering the motion for

**3.** The Supreme Court has directed lower courts to apply the plain meaning when interpreting the Bankruptcy Code. *See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." (internal quotation marks omitted)); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are un-

ambiguous, then, this first canon is also the last: judicial inquiry is complete." (citations and internal quotation marks omitted)). *See also Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 470 (6th Cir. 2008) ("The common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts must apply the plain meaning of the Code unless its literal application would produce a result demonstrably at odds with the intent of Congress." (citing additional cases)); *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir.2007) ("As with any question of statutory interpretation, we must first look to the language of the statute itself. If the language of the statute is clear, then the inquiry is complete, and the court should look no further." (citations omitted)).

default, the court analyzed whether the debt owed to the child representative met the definition of a nondischargeable domestic support obligation. *See id.*

The bankruptcy court in *Greco* separated the definition of domestic support obligation into four elements:

> [Section 101(14A) ] sets out four elements that must be satisfied for a domestic support obligation to arise: (1) the *payee* of the obligation be either a governmental unit or a person with a particular relationship to the debtor or to a child of the debtor, as defined in paragraph (A); (2) the *nature* of the obligation must be support, as defined in paragraph (B); (3) the *source* of the obligation must be an agreement, court order, or other determination, as defined in paragraph (C); and (4) the *assignment status* of the obligation must be consistent with paragraph (D).

*Id.* at 106 (citing *Wis. Dep't of Workforce Dev. v. Ratliff,* 390 B.R. 607, 613 (E.D.Wis. 2008)). The only element at issue, the Greco court noted, was the first—the payee requirement. And the court concluded that a child representative did not fall within the § 101(14A) definition because he was not among the class of payees enumerated in the statute. *Id.* at 107.

The plaintiff argued that the debt for his services was nondischargeable because it was in the nature of support. The court, however, rejected any pre-BAPCPA cases supporting the plaintiff's position as "not well grounded." *Id.* Instead, the court determined that § 101(14A)(A) more clearly identifies who can be a payee for purposes of a domestic support obligation and "[t]he requirement of that paragraph that an obligation be 'owed to or recoverable by' a specified payee must be honored as a

matter of basic statutory construction." *Id.* at 107–08. The requirement would be met if, for example, "a debtor's spouse were required to pay ... because the debtor failed to make a court-ordered payment...." *Id.* at 109. In that instance, "the spouse likely would have a right to recover those fees...." *Id.* But because the obligation was payable to the guardian ad litem and "personal to [the debtor] alone[,]" the court held that it was "neither indirectly 'payable to' nor 'recoverable by' [the debtor's] former spouse or any of the other parties specified in § 101(14A)(A)." *Id.*[4] Other courts also have relied on the plain meaning of § 101(14A), concluding that parties not identified specifically in that section are not entitled to a judgment excepting their debts from discharge. *See Tucker v. Oliver,* 423 B.R. 378, 379, 381 (W.D.Okla.2010) ("Section 101(14A) expressly defines the persons to whom the court-ordered, support related obligation must be owed for it to be a 'domestic support obligation.' To qualify, the debt must be owed to or recoverable by 'a spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative.' The undisputed facts make it clear that Ms. Tucker, as the former daughter-in-law of the debtors, is none of these.... The new definition is substantially similar in many respects [to former § 523], but it does identify certain specific and additional groups of persons to which it applies. This suggests a conscious decision on Congress' part to focus on which debtors were, or were not, within the scope of the nondischargeability provision." (citations and footnotes omitted)). *See also Shaver v. Forgette (In re Forgette),* 379 B.R. 623, 625–26 (Bankr. W.D.Va.2007) (concluding that debt was

---

**4.** The *Greco* court also concluded that the child representative did not fall within the ordinary meaning of a "legal guardian" or the

Bankruptcy Code's definition of "governmental unit." *See id.* at 109–10.

not a domestic support obligation because it was owed to a third party and not owed to or recoverable by former spouse); *Leo, Warren, Rosenfield, Katcher, Hibbs & Windsor, P.C. v. Brooks (In re Brooks),* 371 B.R. 761, 764 (Bankr.N.D.Tex.2007) (dismissing § 523(a)(5) action because law firm to which debt was owed—and for which debtor was solely liable—did not fall within the universe of payees listed in § 101(14A)).

**B. Decisions Declining to Follow the Plain Meaning of the Code and Holding That the Dischargeability of a Debt Owed to a Creditor Not Listed in Former § 523(a)(5) or Current § 101(14A) Turns on Whether the Debt is Found to Be a Support Obligation—Even if the Debtor's Spouse, Former Spouse or the Parent of the Debtor's Child is Not Jointly Liable on the Obligation**

A second line of authority interprets the payee requirement very broadly—or, perhaps, more accurately, reads it out of the statute entirely—and excepts from discharge those debts that are support obligations, or in the nature of support, even if payable to a third party, such as a guardian ad litem, not listed in § 101(14A) (or former § 523(a)(5)), and even if the debtor's spouse, former spouse, or parent of the debtor's child will not remain liable on the obligation if it is discharged.

**1. Pre–BAPCPA Law**

Under § 523(a)(5) before the amendments enacted by BAPCPA, a debtor did not receive a discharge of "any debt—. . . *to a spouse, former spouse, or child of the debtor,* for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . ." 11 U.S.C. § 523(a)(5) (2004) (emphasis added). In a number of pre-BAPCPA cases, courts addressed the question of whether former § 523(a)(5) excluded debts from discharge that were payable to third parties, such as attorneys for a former spouse, guardians ad litem or other professionals retained in connection with domestic cases. In one of the earliest federal circuit decisions, *Pauley v. Spong (In re Spong),* 661 F.2d 6, 7 (2d Cir.1981), the debtor had agreed to pay directly to his wife's attorney, $4,000 of attorney fees incurred in a contested divorce proceeding.[5] The lower courts concluded that the debt was dischargeable under § 523(a)(5) "because it was not payable to defendant's former spouse." *Id.* at 8. On appeal, the debtor/appellee argued that the " 'owed directly to a spouse' " language contained in § 523(a)(5)'s legislative history—the House and Senate Judiciary Committees' reports describing the former Code provision—meant that "the money must be payable directly to the spouse." *Id.* at 9. The Second Circuit, however, rejected this argument, stating that "appellee overlooks the well-established principle of bankruptcy law that dischargeability must be deter-

**5.** A bankruptcy court sitting in the Second Circuit has construed *Spong* as holding that a debt in the nature of support owed to a payee not listed in former § 523(a)(5) is nondischargeable even if the debtor's spouse or former spouse is not jointly liable on the debt. *See Jenkins v. Glynn (In re Glynn),* 138 B.R. 360, 362 (Bankr.D.Conn.1992). By contrast, a bankruptcy appellate panel sitting in the Ninth Circuit has read *Spong* as hinging on the "concern that the non-debtor spouse would remain liable on the debts if the debtor were discharged. . . ." *Eisen v. Linn (In re Linn),* 38 B.R. 762, 763 (9th Cir. BAP 1984). The *Glynn* court rejected this interpretation of *Spong. See Glynn,* 138 B.R. at 362 ("I do not adopt the *Linn* interpretation of *Spong.* Had the *Spong* court intended the result attributed to it by *Linn,* it would have said so directly rather than by implication.").

mined by the substance of the liability rather than its form." *Id.* The court concluded that the "appellee's undertaking to pay the wife's legal fees [was] a paradigmatic third party beneficiary contract ... [in which the] benefits flow to both the promisee and the third party, and either may sue to enforce the contract." *Id.* at 10 (citation omitted). The *Spong* court added that in this type of contractual situation, "it would be exalting form over substance to fail to treat the appellee's agreement to pay his wife's counsel fee as a 'debt ... to a spouse ... for alimony ... maintenance ..., or support[,]' and that, therefore, it is nondischargeable in bankruptcy." *Id.* at 11.

A number of other circuit courts likewise have looked to the substance rather than the form of the liability in holding that fees owed to and payable directly to a third party are dischargeable under § 523(a)(5). *See Holliday v. Kline (In re Kline)*, 65 F.3d 749, 750 (8th Cir.1995) (concluding that "attorney fee awards that are in the nature of maintenance or support can be nondischargeable under § 523(a)(5) even if payable directly to the attorney"); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1490 (10th Cir.1995) (agreeing with other courts that "form should not be placed over substance and that it is the nature of the debt that controls, not the identity of the payee"); *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir.1993) ("Because the fees charged by [attorney and guardian ad litem] were incurred during a court hearing that was for [the child's] benefit and support, and because the state court then ordered the fees to be paid by [debtor], we conclude that the fees constitute a nondischargeable debt under § 523(a)(5)."); *Peters v. Hennenhoeffer (In re Peters)*, 964 F.2d 166, 167 (2d Cir.1992) (following *Spong* and holding that dischargeability must be determined based on substance of liability).

In some cases, the dischargeability of fees owing and payable directly to guardians ad litem was squarely at issue. In *Dvorak*, for example, the state court ordered the debtor to pay fees not only to the former spouse's attorney, but also to a guardian ad litem. The Fifth Circuit concluded that the fees were in the nature of child support since they were incurred as part of proceedings to determine which parent would provide the best home for the child. Thus, the *Dvorak* court held that the guardian ad litem fees were nondischargeable under former § 523(a)(5). *Dvorak*, 986 F.2d at 941.

Similarly, in *Miller*, the state court had entered judgments ordering the debtor to pay directly to the guardian ad litem and the court-appointed psychologist the fees they had billed in connection with a contested divorce proceeding. The judgments also stated that they were "in the nature of support on behalf of the parties' minor children and, as such, neither were dischargeable in bankruptcy." *Miller*, 55 F.3d at 1488. The debtor asked the bankruptcy court to declare the judgment debts dischargeable in her bankruptcy case. Based on the plain language of § 523(a)(5), the bankruptcy court concluded that the debts did not fall within the exception to discharge because the obligations "were not owed to a spouse, former spouse, or child of the debtor...." *Id.* The district court reversed based on the Tenth Circuit's earlier decision in *Jones v. Jones (In re Jones)*, 9 F.3d 878, 881–82 (10th Cir. 1993), which held that "the term 'support' as used in § 523(a)(5) is entitled to broad application" and that "court-ordered attorney's fees arising from post-divorce custody actions are deemed in the nature of support ... and nondischargeable." *See Miller*, 55 F.3d at 1489.

In its opinion affirming the district court, the Tenth Circuit in *Miller* reasoned that "[e]xceptions to discharge are to be narrowly construed, so as to effect the 'fresh start' purpose of bankruptcy. The policy underlying § 523(a)(5), however, favors enforcement of familial support obligations over a 'fresh start' for the debtor." *Id.* at 1489 (citation omitted). The court reasoned:

> [D]ebts to a guardian ad litem, who is specifically charged with representing the child's best interests, and a psychologist hired to evaluate the family in child custody proceedings, can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding.

*Id.* at 1490. Thus, in *Miller,* the Tenth Circuit followed its previous decision in *Jones* and held that the guardian ad litem fees were nondischargeable and accordingly reaffirmed the principle that the nature of debt, rather than the identity of the creditor, should determine the outcome of § 523(a)(5) litigation.

Following this circuit-level authority, some bankruptcy courts have interpreted former § 523(a)(5) broadly to except from discharge debts categorized as support obligations even when the former spouse, spouse or child has no independent liability for the debt—particularly guardian ad litem and other professional's fees incurred for a child's benefit and support. In *Madden v. Staggs (In re Staggs)*, 203 B.R. 712, 714–16 (Bankr.W.D.Mo.1996), for example, the state court appointed a guardian ad litem for a minor child in a post-dissolution custody matter and assessed the guardian ad litem fee against the debtor. The bankruptcy court determined initially that the guardian ad litem fees were in the nature of support and nondischargeable under former § 523(a)(5) because "the services provided by the [guardian ad litem]

on behalf of the minor child were for the child's benefit and support. . . ." *Id.* at 721 (stating that the guardian ad litem "stood 'in the shoes' of the minor child and fulfilled her duty to protect the minor child's best interests"). The debtor argued that because the fees were owed directly to the guardian ad litem and not to the minor child, the fees were dischargeable. The court rejected this argument, concluding that "[t]he fact that the minor child would not be responsible for paying the guardian ad litem fees in the event the [c]ourt declared the fees to be dischargeable does not change the character of the fees [since they were] incurred . . . on behalf of and for the benefit and support of the minor child. . . ." *Id.See also Brown v. Brown (In re Brown)*, 177 B.R. 116, 119 (Bankr. M.D.Fla.1994) (determining that debt owed to former spouse's attorneys was excepted from discharge even though fees were payable directly to attorneys and former spouse had no obligation to pay the fee award); *Glynn*, 138 B.R. at 362 (finding that debtor's portion of debt owed and payable directly to attorney appointed to represent minor children was nondischargeable since parties conceded debt was in nature of support). Thus, under the pre-BAPCPA case law, many courts excepted debts from discharge even if they were payable to someone other than a spouse, former spouse or child of the debtor and even when the spouse, former spouse or child would not be jointly liable for the debts.

## 2. Post–BAPCPA Law

Most courts interpreting § 101(14A) have not deviated from the rationale expressed in pre-BAPCPA caselaw that, in analyzing the dischargeability of debts payable to a third party, it is the nature of the debt, rather than the identity of the creditor, that controls—even if the debtor and non-debtor party are not jointly liable

to the third party for the obligation. For example, the district court in *Greco* rejected the bankruptcy court's plain-meaning analysis of § 101(14A), instead emphasizing the substance of the liability over the identity of the obligee:

> The Seventh Circuit has not addressed whether a child representative can qualify for the domestic support exception, though it has endorsed the notion that section 523(a)(5) can except debts owed to third parties. *See In re Rios*, 901 F.2d 71, 72 (7th Cir.1990)....From this court's own research, [pre-BAPCPA] six circuits have interpreted the domestic support exception to preclude discharge of debts owed to third parties when the bounty of the debt is related to maintenance or support obligations. The precise rationale for why the explicit payee requirement should not control has varied. Some courts have assumed that if the debt is not paid by the debtor, the creditor could collect from the spouse, and thus a payment to the creditor is indirectly a payment to the spouse. Other decisions have stated that "the emphasis [should be] placed on the determination of whether a debt is in the nature of support, rather than the identity of the payee." *Miller*, 55 F.3d at 1490[.]

> The decision in *Miller* is instructive.... The Tenth Circuit concluded: "[T]o hold a debt dischargeable simply because the money was payable to someone other than the spouse [or child], would be to put form over substance, in contravention of established bankruptcy law." *Id.* [at 1490.]

> ... This court adopts the uniform circuit court authority regarding the scope of the domestic support exception....

*Greco*, 415 B.R. at 666–67 (citations, footnotes and internal quotation marks omitted). *See also Nab v. Manard–Hester (In re Manard–Hester)*, 2009 WL 2501142 at *3 (Bankr.D.Neb. Aug. 12, 2009) ("The law in the Eighth Circuit is clear that attorney fees in a domestic relations case awarded directly to the attorney can be excepted from discharge under the pre-BAPCPA version of § 523(a)(5). The BAPCPA amendments to § 523(a)(5) have not changed that analysis." (citation and footnote omitted)); *Kelly v. Burnes (In re Burnes)*, 405 B.R. 654, 659 (Bankr. W.D.Mo.2009) ("I see no substantive difference between the 1988 Code's 'to a spouse, former spouse, or child' and BAPCPA's 'owed to or recoverable by ... a spouse, former spouse, or child.' Consequently, I see no basis to conclude that the Eighth Circuit would interpret § 101(14A) under BAPCPA differently than it did § 523(a)(5) under the 1988 version of the Code.").

**C. Decisions Creating a Limited Exception to the Plain–Meaning Rule and Holding That the Dischargeability of a Support Debt Owed to a Creditor Not Listed in Former § 523(a)(5) or Current § 101(14A) Turns on Whether the Debtor's Spouse, Former Spouse or the Parent of the Debtor's Child is Jointly Liable on the Obligation**

A third line of authority analyzes the dischargeability of support obligations owed to a payee other than one of those enumerated in former § 523(a)(5) or current § 101(14A) by looking to whether the debtor's spouse, former spouse, or the parent of the debtor's child would remain liable for the debt if it were discharged in the debtor's case. *See Linn*, 38 B.R. at 763 (finding debt dischargeable when "it was the debtor alone who was ordered to pay the attorney and the psychiatrist ... [and if] not paid, the former wife and the child will not be liable"). *See also Kline*, 65 F.3d at 751 ("We have no doubt that, if

Kline's obligation is held to be dischargeable, Christy Kline could be liable in *quantum meruit* for the value of [the attorney's] services rendered to her during the divorce proceeding. That being the case, the state court's consideration of 'the financial resources of both parties' in ordering Keith Kline to pay the fees would be for naught, simply because the award was in favor of [the attorney].... In these circumstances, we hold that the Bankruptcy Court did not err in concluding that the judgment against Kline for his former wife's attorney fees was in the nature of maintenance. We further hold that Kline's obligation to pay the attorney fees is nondischargeable ... notwithstanding that it is payable directly to [the attorney].").

Kassicieh argues in the alternative that, if the Court opts not to follow the plain-meaning approach, it should follow this third line of authority and adopt the rationale of the bankruptcy court in *Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini)*, 365 B.R. 251 (Bankr. S.D.Fla.2007).[6] Relying on *Gentilini*, Kassicieh posits that the dischargeability of the GAL fees should hinge on whether Mascotti—who, as the parent of his children, is among the class of entities identified in § 101(14A)—is jointly liable to Battisti on the obligation. Put differently, according to Kassicieh, the dischargeability of a support obligation owed directly to a third party should depend upon whether one of the entities enumerated in § 101(14A)—a spouse, former spouse, parent of, or legal guardian for, the debtor's child—is jointly liable for the debt.

In *Gentilini*, the court agreed with the decisions in *Spong* and *Kline* to the extent that those courts excepted a third-party debt from discharge under § 523(a)(5) when the debt was deemed to be a support obligation and the former spouse also was liable or otherwise would suffer an adverse financial impact upon discharge of the debt. *See id.* at 255. But the court then rejected the line of authority in which courts expanded the language in § 523(a)(5) to discharge debts without regard to whether such discharge would affect a former spouse or child. *Id.* The *Gentilini* court reasoned:

> This Court concludes that both elements of the statute must be established to except a debt from discharge under § 523(a)(5). The debt must be in the nature of support, but also must be a debt to the former spouse or child. *This "debt to" element can be satisfied when the obligation is payable directly to a third party*, typically a professional who provided services to benefit the wife or child, *but only if the former spouse is also obligated for the fees.*

*Id.* at 256 (emphasis added). Under the rationale of *Gentilini*, then, the GAL fees in this case would be dischargeable if Kassicieh were solely obligated for his portion of the fees and a discharge of his obligation thus would not create any detrimental financial consequence for Mascotti or the children. *See id.* at 257 ("[I]f only the debtor is obligated and discharge will have no impact on the former wife, this Court finds no reasoned basis for expanding the 'debt to' element in the statute in order to apply § 523(a)(5) solely for the protection

6. Although decided after October 15, 2005—the effective date of most of the BAPCPA amendments to the Bankruptcy Code—the debtor in *Gentilini* filed his petition before the portions of the new law controlling the outcome of the dischargeability dispute in his case (the amendment to the statutory language of § 523(a)(5) and the addition to the Code of § 101(14A)) went into effect. Thus, the court applied the pre-BAPCPA version of § 523(a)(5). *See id.* at 254 n. 1.

of third party professionals.").[7]

At least one case decided under BAPC-PA follows this more-limited approach and requires that one of the persons identified in § 101(14A) also remain liable on the obligation to a third party in order to qualify as a domestic support obligation. *See In re Johnson*, 397 B.R. 289, 296 (Bankr.M.D.N.C.2008) (stating that debt need not be paid directly to identified payees in § 101(14A), but former spouse also must remain liable on debt).

## D. The *Calhoun* Decision

The Sixth Circuit weighed in on the direct-payee issue (interpreting § 523(a)(5) as it read prior to the enactment of BAPC-PA) in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). There, the debtor had assumed a number of joint debts under a separation agreement. He also agreed to hold his former spouse

harmless for those debts. The bankruptcy court deemed the assumption of debt to be in the nature of support and nondischargeable under former § 523(a)(5). *See Calhoun*, 715 F.2d at 1105. The first question on appeal was "whether those obligations not payable *directly* to the former spouse are nondischargeable under § 523(a)(5)." *Id.* at 1106. Relying on the *Spong* court's rejection of a direct-payment requirement, *see id.*, the Sixth Circuit held that "payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable." *Id.* at 1107.[8]

As discussed below, *Calhoun* can be read two ways. Under one reading, *Calhoun* employed a broad approach to interpreting § 523(a)(5); under an alternative reading, *Calhoun* embraced the more limited approach taken by the court in *Gentilini*. As previously noted, the Debtor relies on *Gentilini* and contends that the

---

**7.** Kassicieh also raises standing as an issue—albeit peripherally—and cites two cases from this Circuit: *O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears v. Perlin (In re Perlin)*, 30 F.3d 39 (6th Cir.1994) and *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476 (6th Cir. BAP 1998). These cases are inapposite even though each addresses the dischargeability of debts under former § 523(a)(5). In *Perlin*, the former spouse's attorneys filed an adversary proceeding and requested that a debt for fees—payable under the divorce decree directly to the former spouse—be excepted from discharge. The court concluded that the plaintiffs lacked standing to pursue a nondischargeability claim because the plaintiffs had "no enforceable right to payment [of the fees,]" *Perlin*, 30 F.3d at 41, and the debt was owed directly to the debtor's former spouse and not the plaintiffs. *Id.* at 42.

The court in *Cundiff* likewise addressed a standing issue. In that case, the debtor was required to pay $10,000 directly to her former spouse for attorney fees. Before she paid the fees, her former spouse filed Chapter 7. He did not schedule the fee award owed to him or the debt he owed to his attorneys. *Cundiff*, 227 B.R. at 478. In the debtor-wife's case,

the former husband commenced a proceeding to determine dischargeability under § 523(a)(5), and the wife challenged his standing. The Bankruptcy Appellate Panel for the Sixth Circuit reversed the bankruptcy court and held that the former husband did not have standing to pursue a nondischargeability claim against the debtor. Instead, because the fee award was not disclosed in his case—and therefore neither administered nor abandoned by his Chapter 7 trustee—he did not have an interest in that judgment. Rather, his Chapter 7 trustee was the only party with an interest in the judgment and thus with standing to pursue a nondischargeability action. *See id.* at 478–79.

**8.** The *Calhoun* court reversed and remanded the bankruptcy court's decision for two reasons. First, the bankruptcy court, applying an incorrect legal standard, wrongly concluded that the language of the separation agreement controlled the issue of whether the debts were dischargeable. *Id.* at 1111. The second error by the bankruptcy court was that it did not separately consider the dischargeability of each loan assignment and factors such as "the type of loan involved, its purposes and the circumstances of the parties." *Id.*

GAL fees are dischargeable because their non-payment will have no financial impact on Mascotti. His analysis would be consistent with *Calhoun* if the Court were to read the *Calhoun* holding as permitting a debtor to receive a discharge of obligations in the nature of support if the spouse, former spouse or child are not liable for the discharged obligation and therefore not financially harmed by their non-payment. By contrast, Kassicieh's analysis would be inconsistent with *Calhoun* if that decision were to be read more broadly—as holding that the discharge of debts in the nature of support should be denied regardless of the financial impact of the debtor's non-payment on the spouse, former spouse or parent of the debtor's child.

*Calhoun* includes passages pointing both ways. In this regard, the Sixth Circuit first addresses the legislative history, noting that it is conflicting:

> The initial question is whether those obligations not payable *directly* to the former spouse are nondischargeable under § 523(a)(5). The Senate and House Reports contain conflicting language. At one point they seem to indicate payments must be made directly.
>
> > Paragraph (5) excerpts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b)) by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed *directly* to a spouse or dependent. *See Hearings*, pt. 2, at 942 (emphasis supplied)
>
> H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977) *reprinted in* [1978] U.S.Code Cong. & Ad. News, 5787, 6320; S.Rep. No. 95–989, 95th Cong., 2d Sess.

79, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5865. *The remaining portion of the report, however, refutes any direct payment requirement in the case of an agreement to hold a spouse harmless on joint debts.*

> This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. *See Hearings*, pt. 3, at 1287–1290.

*Id.*

*Calhoun*, 715 F.2d at 1106 (emphasis added). The passage emphasized above points to a narrow reading of *Calhoun*. The Sixth Circuit then stated:

> Bankruptcy court decisions have uniformly found hold harmless clauses to create nondischargeable obligations. *E.g.*, [*Petoske v. Petoske (In re Petoske)*], 16 B.R. 412 (Bankr.E.D.N.Y. 1982); [*Gentile v. Gentile (In re Gentile)*], 16 B.R. 381 (Bankr.S.D.Ohio 1982); [*French v. Prante (In re French)*], 9 B.R. 464, 466–67 (Bankr. S.D.Cal.1981). We agree with these courts and hold that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable.

*Id.* at 1107. In the bankruptcy court cases cited by the *Calhoun* court in the excerpt quoted above, the substance of the liability was key. *See Petoske*, 16 B.R. at 414 ("[T]he plaintiff has carried her burden of proof and has established that the debt assumption provision in question was intended to be and actually is in lieu of

alimony or support."); *Gentile,* 16 B.R. at 383 ("Relief by way of payment of debts, an obligation which defendant assumed in the dissolution agreement, must have been intended as a further contribution towards the sustenance of his now separated family."); *French,* 9 B.R. at 468 ("In short, the assumption of the Prante obligation by the debtor provided his former spouse with added economic security and aided her in supporting herself and the children. It must therefore be considered in the nature of a support payment."). In other words, in each of these cases, the non-debtor spouse was jointly liable to the payee and thus could have been harmed financially by the debtor's non-payment. This points to a limited reading of *Calhoun* along the lines of *Gentilini.* On the other hand, the language used in *Calhoun's* express holding—"that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable[,]" 715 F.2d at 1107—is expansive and arguably points to a broad reading of *Calhoun.*

### V. Conclusion

Based on the record before the Court, it appears that the State Court has yet to determine the amount of the GAL fees owed to Battisti or allocate to Kassicieh liability for a portion of the total outstanding GAL fees. Despite the parties' stipulation in this case that the GAL fees are in the nature of support, the missing components—the amount and the parties' relative liability for that amount—are necessary to enable the Court to determine whether the GAL fees qualify as a domestic support obligation under § 101(14A). Thus, the Court will hold an ultimate determination of that issue in abeyance pending a decision by the State Court (1) stating the total dollar amount to be paid the GAL and (2) directing whether and in what amounts or percentages Kassicieh and/or Mascotti are to pay that sum (i.e., allocating an amount to each party, imposing joint and several liability, etc.). The parties shall file a joint status report with the Court within 30 days of any ruling issued by the State Court.

**IT IS SO ORDERED.**