
ORDERED PUBLISHED

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1099-KuBaPa |
| | ) | |
| PATRICIA GUNNESS, | ) | Bk. No. SV 11-18699-VK |
| | ) | |
| Debtor. | ) | Adv. No. SV 11-01590-VK |
| _____ | ) | |
| | ) | |
| JEANETTE BENDETTI; DAVID KARTON, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| PATRICIA GUNNESS, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed – January 16, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

———————

Appearances:    John R. Yates of Greenberg & Bass LLP argued for appellants Jeanette Bendetti and David Karton; Daniel B. Spitzer argued for appellee Patricia Gunness.

———————

Before:  KURTZ, BALLINGER* and PAPPAS, Bankruptcy Judges.

———————

*  Hon. Eddward P. Ballinger, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

KURTZ, Bankruptcy Judge:

## INTRODUCTION

The debtor filed an adversary proceeding against her husband's ex-wife and the ex-wife's family law attorney seeking a determination that the debt she owes to the husband's ex-wife is dischargeable. The bankruptcy court granted summary judgment in favor of the debtor, holding that neither 11 U.S.C. § 523(a)(5)[1] nor § 523(a)(15) apply to the debt. The ex-wife and her attorney appealed.

Because the debt lacks the requisite connection to "a spouse, former spouse, or child <u>of the debtor</u>" (emphasis added), we agree with the bankruptcy court that § 523(a)(5) and § 523(a)(15) are inapplicable. We AFFIRM.

## FACTS

The key facts are undisputed. At the time of her bankruptcy filing, debtor Patricia Gunness and her husband Paul Bendetti jointly and severally owed roughly $280,000 in attorney's fees to Paul's ex-wife Jeanette Bendetti. The attorney's fee awards were issued pendente lite by the Los Angeles County Superior Court in a fraudulent transfer lawsuit Jeanette filed in 2008 against both Paul and Patricia (LASC Case No. ED 008 213). In turn, the fraudulent transfer lawsuit was part of the dissolution proceedings between Paul and Jeanette. Even though the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

dissolution proceedings were commenced in 1993, and a dissolution judgment issued in 1994, the 2008 fraudulent transfer lawsuit was filed in and connected to the dissolution proceedings because Jeanette claimed that, unbeknownst to her at the time, Paul had fraudulently transferred some of their community property assets to Patricia.

Both sides have sparred over the nature of the fee awards, in the sense of whether they are attributable to the dissolution proceedings, the fraudulent transfer lawsuit, or both, and whether the awards were needs based, conduct based, or both. These disputes are irrelevant to our resolution of this appeal.

In July 2011, Patricia commenced her chapter 7 bankruptcy case, and in October 2011 she commenced an adversary proceeding against Jeanette and Jeanette's family law counsel David Karton, to whom some of the fee awards were directly payable. In her complaint, Patricia sought a determination that neither § 523(a)(5) nor § 523(a)(15) applied to the fee awards. Among other things, Patricia asserted in the complaint that the two statutory provisions did not apply because the fee awards were not owed to or recoverable by "a spouse, former spouse or child of the debtor." See § 101(14A)(A)(i); § 523(a)(15).

In June 2012, Patricia filed a summary judgment motion based in part on the same assertions regarding the applicability of § 523(a)(5) and § 523(a)(15) she made in her complaint. Jeanette and Karton opposed the motion. They admitted that neither of them technically was a spouse, former spouse, or child of Patricia's. But they pointed to a number of cases interpreting the scope of § 523(a)(5) or § 523(a)(15) that have either

3

downplayed or ignored the identity of the payee/creditor, instead choosing to focus on the underlying nature of the debt and whether the debt in substance constituted a support award (covered by § 523(a)(5)) or a non-support domestic relations award (covered by § 523(a)(15)). These cases, Jeanette and Karton reasoned, demonstrated that the fee awards should be deemed to be owed to or recoverable by a spouse, former spouse, or child of the debtor in part because of the underlying nature of the fee awards and in part because the state court joined Patricia as a party to the dissolution proceedings. According to Jeanette and Karton, this made Jeanette the equivalent of a spouse, former spouse or child of the debtor. As they put it:

> [Patricia] . . . ignores the fact that she is a party to the divorce proceeding. As such, she is essentially a spouse because, absent the court ordering her joined as a party, only the husband and the wife can be parties to a dissolution proceeding.

Defendants' Opposition to Motion for Summary Judgment (July 24, 2012) at 9:19-22.[2]

The bankruptcy court disagreed with Jeanette's and Karton's broad interpretation of § 523(a)(5) and § 523(a)(15). The bankruptcy court acknowledged the decisions holding that these two provisions do not necessarily require the payee of the debt to be the spouse, former spouse or child of the debtor. But the court concluded that these cases were inapposite. In reaching

---

[2]See also id. at 10:6-8 ("once Patricia was joined as a party to the dissolution action, she comes within the non-dischargeability provisions of § 523(a)(15), and, presumably § 523(a)(5)."); id. at 9:23-24 ("the order for joinder may well be the most significant factor in support of Defendants' contention that the debt owed them from Patricia should not be discharged.")

4

this conclusion, the bankruptcy court focused on the fact that there was no familial relationship between Patricia and Jeanette. According to the court, the purpose, intent, and plain meaning of § 523(a)(5) and § 523(a)(15) all required the specified type of familial relationship as a prerequisite to nondischargeability. Without the requisite familial relationship, the court reasoned, the provisions simply did not apply.

On February 15, 2013, the bankruptcy court entered both an order granting summary judgment and a separate judgment in Patricia's favor disposing of the adversary proceeding. Jeanette and Karton timely filed their notice of appeal on February 27, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

In the process of granting summary judgment, did the bankruptcy court incorrectly hold that § 523(a)(5) and § 523(a)(15) did not apply because the subject debt was not connected to a spouse, former spouse or child of the debtor?

**STANDARDS OF REVIEW**

We review summary judgment rulings de novo. Bendon v. Reynolds (In re Reynolds), 479 B.R. 67, 71 (9th Cir. BAP 2012). The bankruptcy court's decision that a claim is dischargeable also is subject to de novo review. See Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004). So is the bankruptcy court's interpretation of the Bankruptcy Code. See Danielson v. Flores

5

<u>(In re Flores)</u>, 735 F.3d 855, 856 n.4 (9th Cir. 2013) (en banc).

**DISCUSSION**

This appeal hinges on a single question of law regarding the meaning and effect of the phrase "spouse, former spouse or child of the debtor" as applicable to both § 523(a)(5) and § 523(a)(15). Given the plain meaning of the language and the context in which it is used, the phrase appears to limit the scope of debt nondischargeable under both provisions. Generally speaking, § 523(a)(5) covers claims in the nature of alimony, maintenance, or support, while § 523(a)(15) covers other, non-support obligations arising from domestic relations proceedings. As to each provision, the phrase "spouse, former spouse or child of the debtor" on its face appears to specify to whom the debt must be owed for nondischargeability to apply.[3]

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 ("BAPCPA"), the above-referenced phrase appeared directly in § 523(a)(5), which at the time read in relevant part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual

---

[3] Indeed, in addressing this phrase in the context of discussing nondischargeability under § 523(a)(5), Collier on Bankruptcy states:

> Although the courts have not been consistent, the language of the statute dictates that if the obligation is not one owed to the spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative, it is dischargeable under section 523(a)(5), even though it is in the nature of support.

4 Collier on Bankruptcy ¶ 523.11[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2013).

6

debtor from any debt –

        *    *    *
            (5) <u>to a spouse, former spouse, or child of the debtor</u>, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement . . . .

(Emphasis added.)

    BAPCPA restructured § 523(a)(5) by simply declaring nondischargeable a debt "for a domestic support obligation" and moving and refining the detail of what constitutes a domestic support obligation into a new definitional provision, § 101(14A), which specifies that:

    The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is --

    (A) <u>owed to or recoverable by</u> --

            (i) <u>a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative</u>;[4] or

            (ii) a governmental unit;

    (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

    (C) established or subject to establishment before, on, or after the date of the order for relief in a case

---

[4] BAPCPA added to the end of the phrase "spouse, former spouse, or child of the debtor" the following supplemental phrase: "or such child's parent, legal guardian, or responsible relative." The supplemental phrase is not at issue in this appeal because it is undisputed here that we are not in any way dealing with a child of the debtor.

7

under this title, by reason of applicable provisions of--

    (i) a separation agreement, divorce decree, or property settlement agreement;

    (ii) an order of a court of record; or

    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt . . . .

(Emphasis added.)

This restructuring enabled Congress to utilize a uniform and detailed definition of the term "domestic support obligation" in several different sections of the bankruptcy code.[5] Regardless, both before and after BAPCPA, the phrase "spouse, former spouse or child of the debtor" was and is part and parcel of § 523(a)(5), either directly in the text of the statute or indirectly by application of § 101(14A)'s definition of the term "domestic support obligation."

BAPCPA also significantly altered § 523(a)(15). Before BAPCPA, a debt otherwise covered by § 523(a)(15) nonetheless was dischargeable if the debtor was financially unable to repay the debt or the benefit to the debtor associated with discharge outweighed the detriment therefrom to the spouse, former spouse or child of the debtor. See Ashton v. Dollaga (In re Dollaga),

---

[5] See 2 Collier on Bankruptcy, supra, at ¶ 101.14A for a listing of Bankruptcy Code sections in which the term "domestic support obligation" is used; see also Deemer v. Deemer (In re Deemer), 360 B.R. 278, 280-81 (Bankr. N.D. Iowa 2007) (noting the numerous areas of bankruptcy law that the definition affects).

8

260 B.R. 493, 495 (9th Cir. BAP 2001). But BAPCPA removed both the financial capacity criterion and the weighing of debtor's benefit against the creditor's detriment. After BAPCPA, § 523(a)(15) renders nondischargeable any debt:

> (15) <u>to a spouse, former spouse, or child of the debtor</u> and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit; . . . .

(Emphasis added.)

Thus, both § 523(a)(5) and § 523(a)(15) are subject to the same limiting phrase, which references debts to "a spouse, former spouse, or child of the debtor." Even so, many cases, both before and after BAPCPA, have de-emphasized or ignored this phrase, instead choosing to focus on the "nature" of the underlying debt as determining the applicability of the statute. <u>See</u> <u>In re Bub</u>, 494 B.R. 786, 795-96 (Bankr. E.D.N.Y. 2013) (listing cases); <u>Kassicieh v. Battisti (In re Kassicieh)</u>, 425 B.R. 467, 474-77 (Bankr. S.D. Ohio 2010) (same).

Of these cases, <u>Beaupied v. Chang (In re Chang)</u>, 163 F.3d 1138 (9th Cir. 1998), is the only published Ninth Circuit Court of Appeals decision directly addressing the issue. In <u>In re Chang</u>, the unmarried father and mother of a minor child were fighting over custody of the child. The mother accused the father of sexually abusing the child, which led to the state court's appointment of a guardian ad litem and a host of neutral experts and the accrual of nearly $100,000 in expert and guardian ad litem fees. <u>Id.</u> at 1140. The father paid most of these fees during the course of the litigation, but the state court

9

ultimately apportioned liability for the fees such that it ordered the mother to reimburse the father for a portion of the fees he paid and further ordered the mother to pay the guardian ad litem directly for a portion of his fees remaining unpaid. Id.

On appeal from a decision of the bankruptcy court declaring both these debts nondischargeable, this Panel reversed, holding that neither debt was owed to a spouse, former spouse or child of the debtor. Chang v. Beaupied (In re Chang), 210 B.R. 578, 582-83 (9th Cir. BAP 1997). But the Court of Appeals reversed this Panel and reinstated the bankruptcy court's nondischargeability judgment. In re Chang, 163 F.3d at 1141-42. The court of appeals held that "the identity of the payee is less important than the nature of the debt," id. at 1141, and explained that, even though the fees were not directly payable to a child of the debtor – a person explicitly covered by § 523(a)(5) – it was sufficient that the fees were incurred for that child's benefit and were in the nature of support for that child. See id. at 1141 & n.1.

Some decisions discussing Chang and other, similar cases have broken down the cases into two distinct lines of authority. See, e.g., In re Kassicieh, 425 B.R. at 474-77 (listing and categorizing cases); Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini), 365 B.R. 251, 254-56 (Bankr. S.D. Fla. 2007) (same). The first line focuses on whether the debt arose from goods, services or other benefits or relief provided to the spouse, former spouse or child of the debtor in conjunction with domestic relations proceedings. Sometimes, the

10

goods, services, benefits or relief provided have been referred to as the "bounty" of the debt. See In re Kassicieh, 425 B.R. at 476 (citing Levin v. Greco, 415 B.R. 663, 666-67 (N.D. Ill. 2009)). And the second line of cases focuses on the economic impact discharge of the debt would have on the spouse, former spouse or child of the debtor, and whether the state court presiding over the domestic relations proceedings had provided for that impact to fall on the debtor. See, e.g., Holliday v. Kline (In re Kline), 65 F.3d 749, 751 (8th Cir. 1995); Pauley v. Spong (In re Spong), 661 F.2d 6, 10-11 (2d Cir. 1981).

One thing is clear from all of these cases. Even when the debt was not directly payable or owed to the spouse, former spouse or child of the debtor, the bounty of that debt had flowed to one of those family members explicitly covered by the statute, or the discharge of the debt would have adversely impacted the finances of one of those explicitly-covered family members.

Relying on Chang and other, similar cases, Jeanette and Karton ask us to hold that the fee awards Patricia owes them are nondischargeable under either § 523(a)(5) or § 523(a)(15). And yet they admit that neither of them is a spouse, former spouse, or child of Patricia's. Additionally, it is uncontroverted that the bounty of the debt – the benefit of Karton's attorney's services –  did not flow to a spouse, former spouse, or child of Patricia's. Nor would the discharge of this debt in Patricia's bankruptcy case adversely affect the finances of a spouse, former spouse, or child of Patricia's.

Because the familial relationships explicitly covered by the statute are not implicated in the same manner they were

11

implicated in any of the above-referenced decisions, § 523(a)(5) and § 523(a)(15) are inapplicable. We are not aware of any cases extending the coverage of these nondischargeability provisions as far as Jeanette and Karton have asked us to, nor have they cited us to any such cases.

Jeanette and Karton attempt to bridge the gap between them and Patricia by asserting that the state court effectively created the missing familial relationship by joining Patricia in the dissolution proceedings as a party to the fraudulent transfer lawsuit. In essence, Jeanette and Karton contend that, by joining Patricia as a party in the dissolution proceedings, the state court effectively made Jeanette Patricia's spouse or former spouse for purposes of § 523(a)(5) and § 523(a)(15). We disagree. The California procedural rule governing joinder on which they rely, Rule 5.24 of the California Rules of Court, is there to ensure that interested third parties are joined into dissolution proceedings when their rights, duties and/or property interests are at issue in the those proceedings. See Hogoboom & King, CAL. PRACTICE GUIDE: FAMILY LAW ¶¶ 3:440-3:443 (Rutter Group 2013). The cited procedural rule does not purport to create a new familial relationship where none previously existed.

Alternately, Jeanette and Karton argue that the requisite familial relationship can be "imputed" to Patricia. According to Jeanette and Karton, because Patricia's current husband Paul used to be married to Jeanette and because Patricia allegedly participated in Paul's scheme to fraudulently transfer community assets belonging to both Paul and Jeanette, Paul's familial status as Jeanette's former husband can and should be imputed to

12

Patricia. Once again, Jeanette's and Karton's contention, while creative, lacks merit. The nondischargeability decisions addressing imputed conduct, intent and liability are based on long-established principles of agency and vicarious liability. See Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 524-26 (9th Cir. BAP 2002)(discussing the historical development of the law in this area). None of these decisions and none of these legal principles in any way would support our imputing a familial relationship between two unrelated parties.

On a broader level, Jeanette and Karton contend that the policy favoring the enforcement of domestic relations obligations overrides the policy favoring a fresh start for debtors to such an extent that § 523(a)(5) and § 523(a)(15) should be liberally construed, unlike other exceptions to discharge. We admit that some decisions have suggested as much. See In re Kline, 65 F.3d at 750-51; Shine v. Shine, 802 F.2d 583, 585 (1st Cir. 1986). But we disagree with these cases on this point. All exceptions to discharge are to be construed narrowly so that they are confined to their plainly-expressed terms. See Bullock v. BankChampaign, N.A., 133 S.Ct. 1754, 1760-61 (2013); Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998). And the structure of § 523 indicates that all discharge exceptions are subject to the same general standards, like the applicable burden of proof and scope of their construction. See Grogan v. Garner, 498 U.S. 279, 287-88 (1991).

Put another way, each exception to discharge represents Congress' attempt to balance the debtor's entitlement to a fresh start against strong competing policy concerns. See Bullock, 133

13

S.Ct. at 1761; see also Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); In re Chang, 163 F.3d at 1140. To the extent Congress has not adequately balanced the competing policies, Congress will need to amend the discharge exceptions. It is not up to the courts to expand the coverage of the exceptions under the guise of an improper and unwarranted liberal construction of the exceptions.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment in favor of Patricia.

14