In re Regina Teirejra LOPER, Debtor.

Earl Joseph Loper, Plaintiff—
Appellant,

v.

Regina Teirejra Loper, Defendant—
Appellee.

BAP No. WO–05–018.
Bankruptcy No. 03–23982–WV.
Adversary No. 04–1108–WV.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Sept. 8, 2005.

Bret D. Davis, Lamun, Mock, Cunnyngham & Davis, Oklahoma City, Oklahoma, for Plaintiff—Appellant.

Kenneth L. Spears, Oklahoma City, Oklahoma, for Defendant—Appellee.

Before CLARK, BROWN, and KARLIN,[1] Bankruptcy Judges.

## OPINION

KARLIN, Bankruptcy Judge.

Earl Loper (Earl) timely appeals a final Order of the United States Bankruptcy Court for the Western District of Oklahoma, which granted summary judgment in favor of Regina Loper (Regina) on Earl's complaint seeking a determination that the debt Regina owed to him arising out of their divorce was nondischargeable.[2] This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] Neither party elected to have this appeal heard by the United States District Court for the Western District of Oklahoma, thus consenting to review by this Court.

For the reasons set forth below, we REVERSE and REMAND.

---

1. Honorable Janice Miller Karlin, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Kansas, sitting by designation.

2. 28 U.S.C. § 158(a)(1); Fed. R. Bankr.P. 8002(a).

3. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed R. Bankr.P. 8002.

## I. Background

The parties were divorced in Oklahoma on November 21, 2003. Adopting a settlement on all issues reached by the parties, the divorce court found that Earl made more money from his disability payments than Regina made from her house cleaning business. In addition, the divorce court awarded custody of the parties' children to Regina, and ordered Earl to pay approximately $500 in monthly child support. The divorce decree awarded Earl various items of personal property, as well as "$16,825.09 as alimony in lieu of property division which shall be payable to [Earl] by [Regina] within six (6) months."

Regina filed her Chapter 7 bankruptcy in December 2003 and listed the debt owed to Earl as a general, unsecured debt. Earl then filed an adversary proceeding under 11 U.S.C. § 523(a)(5),[4] seeking a determination that the debt was intended to be support for him following the divorce and was thus nondischargeable.[5]

Regina moved for summary judgment on the dischargeability claim, asserting that Earl could produce no evidence to support his claim that the $16,825.09 was intended to be support, and that she was entitled to judgment as a matter of law. She argued the debt represented a dischargeable division of property. Earl responded to the motion for summary judgment, relying exclusively on his own affidavit as evidence that the parties intended the payment to operate as support, and that the money was actually to be used as support.

The bankruptcy court granted summary judgment to Regina, finding the debt to be dischargeable. Specifically, the court found Earl's affidavit to be self-serving and conclusory and, thus, insufficient to survive a summary judgment motion. In addition, the court found that even if it did consider Earl's affidavit, it did not amount to even a scintilla of evidence in support of his claim, and that summary judgment would still be proper.

This appeal followed the bankruptcy court's entry of summary judgment in favor of Regina.

## II. Standard of Review

■ The applicable standard of review of an order granting summary judgment is *de novo,* and this court is to apply the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law.[6] Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[7] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[8] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could

---

4. All future statutory references in the text are to Title 11 of the United States Code.

5. Alternatively, Earl sought a determination the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(15). The bankruptcy court granted summary judgment in favor of Regina on this alternative claim, finding it untimely. Earl did not appeal the bankruptcy court's ruling regarding his claim under 11 U.S.C. § 523(a)(15), and therefore the decision on that claim is final.

6. *See Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.,* 408 F.3d 1300, 1303 (10th Cir.2005).

7. Fed.R.Civ.P. 56(c). Fed.R.Civ.P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr.P. 7056.

8. *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir.2004).

resolve the issue either way." [9] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." [10]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[11] In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[12]

If the movant carries this initial burden, the nonmovant who would bear the burden of persuasion at trial may not simply rest upon the pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[13] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." [14] A party opposing summary judgment must produce more than a scin-

tilla of evidence to survive summary judgment.[15]

Although a party may submit an affidavit in an attempt to create a genuine issue of material fact, the courts have placed some limitations on nonmoving parties. An affidavit containing conclusory statements without specific supporting facts lacks probative value, and thus, cannot defeat summary judgment.[16] Moreover, "[t]o survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.' " [17]

### III. Legal Analysis

 In order for a debt to be found non-dischargeable under 11 U.S.C. § 523(a)(5), the court must find that (1) the debt is in the nature of alimony, maintenance or support; (2) the debt is owed to a former spouse or child; and (3) the debt was incurred in connection with a separation agreement, divorce decree or other order of a court of record.[18] The issue whether an obligation is in the nature of alimony or support is resolved according to federal bankruptcy law, not state law.[19] The policy underlying the discharge excep-

9. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

10. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

11. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

12. *Id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

13. *Id.* (citing Fed.R.Civ.P. 56(e)).

14. *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir.2002).

15. *See, e.g., United States v. AMR Corp.*, 335 F.3d 1109, 1113 (10th Cir.2003).

16. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 997 (10th Cir. BAP 1997).

17. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991)).

18. 11 U.S.C. § 523(a)(5).

19. *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993).

tion for enforcement of spousal or child support obligations outweighs the policy that permits a debtor the privilege of a fresh start.[20] Consequently, the term "support," as used in § 523(a)(5), is construed broadly.[21]

When a divorce decree is entered into by agreement, as this one was, the question of whether an obligation is in the nature of alimony, maintenance or support is resolved by determining (1) the shared intent of the parties as to the nature of the obligation at the time it arose, and (2) whether the obligation had the actual effect of providing support.[22] A written agreement between the parties is persuasive evidence of intent.[23] An unambiguous agreement creates "a substantial obstacle for the party challenging its express terms to overcome." [24]

The divorce decree in this case required Regina to pay Earl $16,825.09 and categorized that debt as "alimony in lieu of property division." Although the Court used the term "alimony," the phrases "alimony in lieu of property division" and "support alimony" have different meanings under Oklahoma law. Oklahoma courts have interpreted "alimony in lieu of property division" to mean something other than "support alimony," and have found that § 523(a)(5) does not apply to "alimony in lieu of property division, because it is essentially money to be exchanged as part of the divorce court's attempt to equalize

the property received in the divorce." [25] Therefore, Earl faces a "substantial obstacle" in overcoming the express terms of the divorce decree, and must thus show that the debt was intended by the parties to be support, and therefore non-dischargeable under § 523(a)(5), notwithstanding this language.

As the party who bears the burden of proof on his claim, Earl was required to set forth specific facts that would be admissible at trial, from which a rational trier of fact could find in his favor, in order to survive summary judgment.[26] Earl sought to satisfy this burden by submitting an affidavit in support of his response to the summary judgment motion. It contained, in part, the following statements:

5. Both my wife and I intended the $16,825.09, to be paid as support.

6. The obligation of $16,825.09, functioned as support for me. After my divorce, I had no home as my ex-wife received the marital homestead. As a result, I was forced to move in with my mother in Kingfisher, Oklahoma.

7. I was intending to use the $16,825.09 to support myself in establishing a new life after my divorce. This amount would have functioned as support for me.

8. At the time of the divorce and to the present, my ex-wife, Regina Loper, ran a successful housekeeping busi-

---

20. *Jones v. Jones (In re Jones),* 9 F.3d 878, 881–82 (10th Cir.1993).

21. *Id.* at 881.

22. *Sampson,* 997 F.2d at 723.

23. *Id.*

24. *Id.*

25. *See, e.g. Lonian v. Lonian (In re Lonian),* 226 B.R. 248 (Bankr.W.D.Okla.1998) (noting distinction between "support alimony" and

"alimony in lieu of property division" and applying 11 U.S.C. § 523(a)(15) to a claim of "alimony in lieu of property division"), and *Simons v. Simons (In re Simons),* 193 B.R. 48 (Bankr.W.D.Okla.1996) (applying 11 U.S.C. § 523(a)(15) to a claim of "alimony in lieu of property settlement").

26. *See Bristol–Myers Squibb Co.,* 353 F.3d at 851.

ness. She would earn an average of $2,500.00–$3,000.00, per month. A large portion of her income was cash.

9. At the time of the divorce, I only earned $2,000.00, per month in disability payments. I am totally disabled and have no other sources of income. I also pay over $500.00, per month in child support to my ex-wife.

10. My ex-wife's income, during our marriage, at the time of divorce and to the present has exceeded my income.[27]

The bankruptcy court found this affidavit to be self-serving and conclusory, and that it thus need not even be considered in determining the motion for summary judgment.[28]

■ Although the affidavit is clearly self-serving,[29] as most any affidavit submitted in opposition to a motion for summary judgment would be, we believe that the affidavit was more than conclusory. Although the affidavit does contain conclusory statements, such as paragraph five which states "Both my wife and I intended the $16,825.09, to be paid as support," the affidavit goes beyond being merely conclusory by providing additional facts that at least partly substantiate his claim that the

parties intended the payment to be support, and that the money was to be used for his support. Because the affidavit provided at least some substantive facts to support Earl's claim,[30] the bankruptcy court should have considered this affidavit when ruling on the summary judgment motion.

■ Having determined that the affidavit should have been considered by the bankruptcy court, we must now shift our focus to the court's finding that the affidavit, even if it were considered, did not rise to even a scintilla of evidence and that summary judgment was still proper. In a case involving the intent of the parties, it is often difficult for either party to present evidence as to intent, other than their own testimony as to what they intended. In such situations, finders of fact are required to look to other supporting evidence, as well as to the credibility of the witnesses, which is not something that can be typically accomplished on summary judgment.

Earl presented evidence not only consisting of his own testimony about the parties' intent, but also included other supporting facts, such as the fact that because Regina was given the family home, he needed money to set up a new home. Because there is no unequivocal evidence to the contrary, the reasonable inference,

---

27. Affidavit in Support of Responses to Motion for Summary Judgment. (Appellant's App. at 66–67).

28. *Loper v. Loper (In re Loper)*, Adv. No. 04–1108–WV at 7 (Bankr.W.D.Okla. Feb. 18, 2005).

29. The affidavit contradicted an attachment to the parties' stipulated divorce Journal Entry, which listed their respective monthly incomes. In the attachment, the parties indicated Earl's income was higher than Regina's by $250 per month ($2,000 for Earl versus $1,750 for Regina). Earl now implies this information was faulty, and infers that Regina had income she was not reporting.

30. By way of example, the parties may have intended the $16,825.09 to be used as support by Earl to allow him to make a down payment on the purchase of a new house, since Debtor received the marital home in the divorce, or to purchase appliances and furniture to replace those items that Debtor retained from the divorce. If Earl always intended to live at his mother's house, however, which can be addressed at trial, that might show the $16,255.09 was not meant to support him while he set up a home, but was instead merely a division of the parties' property.

which on summary judgment must be resolved in the light most favorable to Earl, is that the parties could have intended this $16,825.09 to act as support. This Court concludes that Earl's affidavit amounts to more than a scintilla of evidence. It is sufficient to create a genuine issue of material fact as to whether the parties intended the payment to operate as support.

The Court also concludes that at the summary judgment stage, all evidence and reasonable inferences therefrom must be weighed in favor of the non-movant. It appears to this Court that the affidavit was instead construed in the light most favorable to Regina, the non-movant, by finding Earl's affidavit non-persuasive. Therefore, summary judgment was not proper in this case.

## IV. Conclusion

Accordingly, the Court reverses the bankruptcy court's decision to grant Regina's motion for summary judgment, and remands this case for further proceedings consistent with this opinion.