**In re Eloisa Maria TAYLOR, Debtor.**

**Matthew E. Taylor, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**Eloisa Maria Taylor, Defendant–Appellant–Cross–Appellee.**

**BAP Nos. NM–11–103, NM–11–107.
Bankruptcy No. 10–15832.
Adversary No. 11–01020.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 5, 2012.

Karl F. Kalm of Kalm Law Firm, P.C., Albuquerque, NM, for Defendant–Appellant–Cross–Appellee.

Bonnie B. Gandarilla (George M. Moore with her on the brief) of Moore, Berkson & Gandarilla, P.C., Albuquerque, NM, for Plaintiff–Appellee–Cross–Appellant.

Before NUGENT, KARLIN, and HALL *, Bankruptcy Judges.

* Honorable Sarah A. Hall, United States Bankruptcy Judge, United States Bankruptcy Court

NUGENT, Bankruptcy Judge.

A debt owed by a divorced debtor to her former spouse that is either incurred for spousal support or incurred "in connection with a divorce decree" is excepted from the debtor's Chapter 7 discharge by 11 U.S.C. § 523(a)(5) or (a)(15).[1] These appeals turn on whether a non-debtor spouse's judgment against a debtor for an overpayment of spousal support may be characterized as a domestic support obligation or as one incurred in connection with a divorce decree. We agree with the bankruptcy court that the judgment received by appellee Matthew Taylor against the appellant Eloisa Taylor for the overpayment of support was a debt incurred in connection with a separation agreement, was not a domestic support obligation, and that it should be excepted from Eloisa's discharge. Matthew's allegations that the debt amounted to a domestic support obligation were properly dismissed. We further conclude that the fee-shifting provisions in the parties' Marital Settlement Agreement do not support either the bankruptcy court or this court allowing Matthew's claim for attorneys' fees and costs incurred in prosecuting the adversary proceeding below or this appeal.

## I. Factual Background

Matthew and Eloisa Taylor divorced in Virginia in 2005. The parties entered into an extensive Marital Settlement Agreement. In that agreement, they agreed to submit the matter of spousal support to the domestic court. That court ordered Matthew to pay Eloisa spousal support for 10 years or until she remarried.[2] When Matthew learned that Eloisa was living with another man "in a relationship analogous to marriage," he asked the Virginia domestic court to terminate his support obligation and to order Eloisa to refund any support she had received from him while cohabiting.[3] After a trial, the Virginia court terminated the support order and directed Eloisa to repay Matthew $40,660.59. She was also assessed Matthew's attorneys' fees in the amount of $10,000. Eloisa filed this Chapter 7 bankruptcy case in 2010, prompting Matthew to file an adversary proceeding to except the overpaid support and attorneys' fees (collectively the "Debt") from her discharge. He alleged that the Debt had been incurred through fraud under § 523(a)(2), that it was a domestic support obligation ("DSO") excepted from discharge by § 523(a)(5), or that it was incurred in connection with a divorce decree and therefore excepted from discharge by § 523(a)(15). He also requested an award for attorneys' fees and costs in bringing the adversary and that any such award be excepted from discharge as well.

Eloisa moved to dismiss all three of Matthew's claims, but the bankruptcy court only dismissed the § 523(a)(2) fraud count and the § 523(a)(5) DSO count.[4] Then each party moved for summary judgment on the § 523(a)(15) claim. Mat-

for the Western District of Oklahoma, sitting by designation.

1. All subsequent statutory references are to Title 11 of the United States Code, unless otherwise noted.

2. Final Decree of Divorce ("Divorce Decree") at 3, in Appellant's Appendix ("App.") at 62.

3. Virginia law provides that upon "order of the court based upon clear and convincing

evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year," that spouse's right to receive support may be terminated. *See* Va. Code Ann. § 20–109(A) (2001).

4. Matthew did not appeal the bankruptcy court's dismissal of his § 523(a)(2) claim.

thew's motion also sought an award for attorneys' fees and costs incurred in enforcing the Debt in bankruptcy. The bankruptcy court granted Matthew summary judgment excepting the debt from discharge under § 523(a)(15), but omitted to address the attorneys' fees issue.

Eloisa appeals from the summary judgment order against her, and Matthew appeals from the dismissal of the § 523(a)(5) count and the bankruptcy court's failure to grant him attorneys' fees in connection with the summary judgment motion.

## II. Appellate Jurisdiction and Standard of Review

■ We have jurisdiction of these appeals. Eloisa filed a timely notice of appeal from the summary judgment order, and Matthew filed a timely cross-appeal of the order dismissing his (a)(5) claim and the summary judgment order.[5] Taken together, the dismissal order and the summary judgment order, followed by the entry of judgment, disposed of all of the claims in the adversary complaint and constitute a final order for purposes of appeal,[6] even though the bankruptcy court did not directly grant or deny Matthew's claim for attorneys' fees and costs.[7] Neither party elected to have these appeals heard by the United States District Court for the District of New Mexico.[8]

■ We review the bankruptcy court's dismissal of a claim for failure to state a claim de novo.[9] Likewise, we review the bankruptcy court's determination that the spousal-support-overpayment debt arose in connection with a divorce decree pursuant to § 523(a)(15) de novo.[10] An award of attorneys' fees is reviewed for abuse of discretion, but any statutory interpretation or other legal analysis under-

---

**5.** Fed. R. Bankr.P. 8002(a).

**6.** 28 U.S.C. § 158(a)(1); *Ford v. West*, 222 F.3d 767, 770 n. 1 (10th Cir.2000) (order dismissing claim became final not when it was entered but when final judgment was subsequently issued disposing of all claims); *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997) (bankruptcy court's summary judgment order on nondischargeability claim under fraud exception, combined with judgment for debtor from trial of claims seeking denial of discharge, disposed of entire complaint, and orders thus were final and appealable). *See also Loper v. Loper (In re Loper)*, 329 B.R. 704, 705 (10th Cir. BAP 2005) (treating summary judgment nondischargeability order as final).

**7.** *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201–02, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (promulgating "uniform rule that an unresolved issue of attorney's fees" under 28 U.S.C. § 1291, regardless of "the characterization of those fees by the statute or decisional law that authorizes them," does not affect finality of lower court orders); *Groetken v. Davis (In re Davis)*, 35 Fed.Appx. 826, 828 (10th Cir.2002) (analogizing jurisdic-

tional holding in *Budinich* to § 158(d) and finding jurisdiction despite outstanding attorneys' fee determination); *In re Yates*, No. WY–04–036, 2005 WL 50188, at *2–3 (10th Cir. BAP Jan. 11, 2005) (examining various circuit court approaches to *Budinich* in determining that remand for attorney's fee determination does not nullify jurisdiction under § 158(d)).

**8.** 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

**9.** *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1171 (10th Cir.2011) ("Generally speaking, we review de novo a district court's ruling on a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim."). *See also N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir.2011).

**10.** *In re Short*, 232 F.3d 1018, 1022 (9th Cir. 2000) (stating that whether the debtor's obligation was incurred in the course of a divorce or separation is a legal question reviewed de novo). *See also Manchester v. Annis (In re Annis)*, 232 F.3d 749, 751 (10th Cir.2000) (interpretation of statute reviewed de novo).

lying the trial court's decision concerning attorneys' fees is reviewed *de novo*.[11]

## III. Discussion

### A. The overpayment debt is not support and is not protected by § 523(a)(5).

Because § 523(a)(15) excepts from discharge certain debts "not of the kind described in [§ 523(a)(5)]," and because Matthew appealed from the bankruptcy court's order dismissing his § 523(a)(5) count, we should first determine whether Eloisa's debt to Matthew is in the nature of domestic support. On cross-appeal, Matthew argues that the bankruptcy court erroneously held that "[Mr. Taylor] cannot solely rely on the original character of the debt owed *by* him to his former spouse to state a claim that a debt owed *to* him by his former spouse for overpayment of spousal support is nondischargeable [under § 523(a)(5)]."[12] Matthew asserts that this holding violates Tenth Circuit precedent in *Sylvester v. Sylvester*, which held that courts should look to the parties' respective needs for support at the time of the entry of the domestic support order, not their present needs or the "practical effect" of the discharge on a spouse's ability to sustain those needs.[13]

Matthew argues instead that debts arising from the overpayment of support retain their character as support whether or not the beneficiaries of those debts need support. He relies on two bankruptcy court cases from other circuits, *Ratliff* and *Baker*.[14] But neither *Ratliff* nor *Baker* is like this case. *Ratliff* deals with determining whether a Chapter 13 debtor's obligation to a governmental unit for food stamp overpayment is a domestic support obligation that is excepted from discharge under § 523(a)(5). The *Ratliff* court correctly concluded that, given the expanded scope of the DSO definition in § 101(14A)(A)(ii), domestic support obligations may be owed to governmental units and, accordingly, those debts are excepted from discharge by § 523(a)(5).[15] As Matthew is not a governmental unit, the rule in *Ratliff* gives him no help on cross-appeal.

Neither does *Baker*. There, the bankruptcy court for the Northern District of Ohio followed Sixth Circuit authority and Ohio law to find that a creditor-father's overpayments of support to the debtor-mother that resulted from an erroneous administrative garnishment of his wages were support when they were made and that equitable principles rendered the obligation to repay them not dischargeable

11. *See In re Albrecht*, 245 B.R. 666, 669 (10th Cir. BAP), *aff'd*, 233 F.3d 1258 (10th Cir. 2000) (A bankruptcy court's award of attorneys fees will not be disturbed on appeal absent an abuse of discretion or erroneous application of the law; any statutory interpretation or other legal analysis underlying the trial court's decision concerning attorney's fees, however, is reviewed *de novo*.).

12. Memorandum Opinion at 10, *in* App. at 43.

13. 865 F.2d 1164, 1166 (10th Cir.1989) (rejecting as a minority approach *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983)).

14. *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607 (E.D.Wis.2008); *Allen County Child Support Enforcement Agency v. Baker (In re Baker)*, 294 B.R. 281 (Bankr.N.D.Ohio 2002).

15. *Ratliff*, 390 B.R. at 614. *Ratliff* centers on whether the food stamp overpayment claims are entitled to priority under § 507(a)(1)(A) as claims filed by the unit or under (a)(1)(B) as claims that have been assigned to the unit. The court concluded they fell into the latter class.

under § 523(a)(5).[16] The *Baker* court concluded that because the overpayments were made pursuant to the original child support order, the father was required to make them and the overpayments "fall within the exception to discharge."[17] The *Baker* court relied on Ohio law that "provides that an overpayment of child support still retains its character as a support obligation."[18] We are aware of no such New Mexico authority and we are not bound by *Baker*. Rather we hew to long-time Tenth Circuit precedent that guides how we and our sister bankruptcy courts determine when a marital obligation is support for § 523(a)(5) purposes.[19]

■ The bankruptcy court's decision is well-reasoned and consistent with Tenth Circuit law. Section 523(a)(5) provides that debts for domestic support obligations are nondischargeable in bankruptcy. Section 101(14A) defines "domestic support obligation" as

a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian or responsible relative for the purpose of collecting the debt.[20]

The distilled essence of § 101(14A) defines a domestic support obligation as "a debt [ ] that is in the nature of [ ] support [ ] of such [ ] former spouse [ ]." In other words, as the bankruptcy court held, the Debt must be in the nature of support for Matthew to be excepted from Eloisa's discharge under § 523(a)(5).

■ In *In re Sampson*,[21] the Tenth Circuit set forth a two-part test to determine if a debt is nondischargeable under § 523(a)(5) and identified the relevant time frame for the inquiry:

---

**16.** *Baker,* 294 B.R. at 288.

**17.** *Id.*

**18.** *Id.* at 287.

**19.** Note, too, that *Baker* was decided in 2002, before BAPCPA substantially broadened the scope of the DSO definition in § 101(14A).

**20.** 11 U.S.C. § 101(14A).

**21.** *Sampson v. Sampson (In re Sampson),* 997 F.2d 717 (10th Cir.1993).

[W]hether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties's [sic] intent and the substance of the obligation. The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support. *See Grogan v. Garner,* 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The parties' intent is the "initial inquiry" to determine whether a debtor's obligation to his or her former spouse is actually in the nature of alimony, maintenance or support. *[In re] Yeates,* 807 F.2d [874] at 878 [ (10th Cir.1986) ]. This inquiry, however, does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted. *See Matter of Benich,* 811 F.2d 943, 945 (5th Cir.1987). Rather, the critical inquiry is the shared **intent of the parties at the time the obligation arose.** *Tilley v. Jessee,* 789 F.2d 1074, 1078 (4th Cir.1986).[22]

■ The obligation for the Debt arose when the dissolution court entered the overpayment judgment against Eloisa in response to Matthew's request to terminate his spousal support obligation and to be reimbursed "for any and all spousal support payments which [Matthew] is required to make between the filing of [the Motion to Terminate Spousal Support] and the date of the resolution of [his] Motion,

with interest."[23] He filed that motion to have the Virginia court determine that Eloisa was no longer entitled to support after May 15, 2009, not because he needed support from her.

Finally, we agree with the bankruptcy court's assessment that Matthew's complaint contained no facts from which to determine that the Debt was in the nature of support for Matthew when the obligation rose. Matthew counters that he alleged facts in his complaint that the state judgment resulted in a retroactive judgment and that Eloisa's companion made significant financial contributions to her.[24] Although these facts may prove Eloisa no longer needed support from Matthew, they are irrelevant in terms of determining Matthew's "need for support" at the time the obligation arose.

The bankruptcy court's decision is consistent with Tenth Circuit law that the nature of the debt at the time it arose controls § 523(a)(5)'s applicability. That the debt is based on Matthew's overpayment of spousal support to Eloisa does not make it support for Matthew. Because it is not support, it is not protected by § 523(a)(5).[25]

**B. Section 523(a)(15) excepts Eloisa's overpayment obligation from her discharge.**

Eloisa argues that the bankruptcy court erred in applying § 523(a)(15) to except the Debt from her discharge. She says that this holding ignores Congressional in-

---

**22.** *Id.* at 723 (emphasis added).

**23.** Motion to Terminate Spousal Support at 6, *in* App. at 76.

**24.** Matthew's Brief at 5–6.

**25.** *See Lankford v. Drinkard (In re Drinkard),* 245 B.R. 91 (Bankr.N.D.Tex.2000) (debtor-wife's obligation to reimburse her former husband, the child support obligor, for support that he had overpaid during period when child was living with him was not DSO within plain meaning of (a)(5)); *In re Lutzke,* 223 B.R. 552 (Bankr.D.Or.1998) (claim for overpayment of child support not given priority as support given no evidence that the debtor was ordered to pay creditor-spouse support).

tent that § 523(a)(15) be read to protect only *dependent* spouses and children from the discharge of non-support marital obligations. She argues that because Matthew was not a dependent spouse, he is not entitled to § 523(a)(15)'s protection. This argument completely ignores the plain language of the statute.

We concur with the bankruptcy court's analysis that: (1) exceptions to discharge under § 523(a)(15) are construed more liberally than other provisions of § 523;[26] (2) application of the plain language to the facts of this case did not produce an absurd result or a result manifestly at odds with Congressional policy; and (3) the 2005 amendments to § 523(a)(15) eliminating the former law's balancing test made the question of Matthew's dependency irrelevant. We also agree with the bankruptcy court's conclusions that the statutory language of § 523(a)(15) is not ambiguous and application of its plain meaning required finding that the Debt arose "in connection with a separation agreement, divorce decree or other order of a court of record."

The Supreme Court has stated that a court's function in interpreting a statute is to construe the language so as to give effect to the intent of Congress.[27] Only when following a statute's plain meaning would lead to "absurd or futile results" do we look to legislative purpose.[28]

And, if the plain meaning yields a result that is "plainly at variance with the policy of the legislation as a whole," courts seek to determine what that policy is.[29] Our circuit has explained the statutory construction process as follows:

> The starting point in analyzing this issue must be the language of the statute. If the language is clear and unambiguous, judicial inquiry is at an end in all but the most extraordinary circumstances. Unless the plain language of the statute would produce a result demonstrably at odds with the intention of its drafters, the court must give effect to the clear meaning of the statute as written.[30]

Section 523(a)(15) provides in relevant part:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> > (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

This language contains no reference to a "dependent" spouse.[31]

---

**26.** *See In re Crosswhite,* 148 F.3d 879, 881–82 (7th Cir.1998) (a § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions). Because Congress enacted § 523(a)(15) to broaden the types of marital debts that are nondischargeable beyond those described in § 523(a)(5), by implication a § 523(a)(15) exception from discharge would also be construed more liberally than other § 523 exceptions.

**27.** *United States v. Am. Trucking Ass'ns, Inc.* 310 U.S. 534, 542–543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

**28.** *Id.* at 543, 60 S.Ct. 1059.

**29.** *Id.* (internal quotation marks omitted).

**30.** *Starzynski v. Sequoia Forest Indus.,* 72 F.3d 816, 820 (10th Cir.1995).

**31.** *Chickasaw Nation v. United States,* 534 U.S. 84, 90, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (As a general rule of statutory construction, a statute is ambiguous if it is "capable of being understood in two or more possible senses or ways."); *In re Geneva Steel Co.,* 281 F.3d 1173, 1178 (10th Cir.2002) (noting

Eloisa suggests that if § 523(a)(15) applied to claims for the overpayment of support, it would say so.[32] That is beside the point; the statute provides that obligations that: (1) are to a "former spouse"; (2) are not (a)(5) support; and (3) are incurred "in connection with" a divorce decree or an "order of a court of record" are excepted from the Chapter 7 discharge.[33] Here, her debt is to her former spouse, is not for support, and was incurred as a direct result of an order of a court of record. The Debt clearly falls within § 523(a)(15)'s ambit.

Even if resort to Congressional intent were necessary here, the bankruptcy court's application of the statute is entirely consistent with it. Congress first made marital debt that was not support nondischargeable when it enacted former § 523(a)(15) in 1994.[34] That iteration provided that an individual is not discharged from any debt

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the

debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.][35]

Courts applying this rule first determined whether the debtor had the present ability to pay the debt from income and assets not needed for family support or business expenses. Then, the courts applied a balancing test to determine whether the benefit of a discharge to the debtor outweighed the detrimental effects of the discharge on the creditor spouse.

In 2005, Congress amended § 523(a)(15) by striking the balancing tests contained in subparts (A) and (B). That courts no longer need to balance the ability to pay with the need for support suggests that Congress sought to broaden the scope of nondischargeable marital debt by abandoning a need-driven analysis of the dischargeability of non-support marital debt.[36]

> Essentially, the combination of amended § 523(a)(5) and (15) [ ] exclude from discharge all marital and domestic relations obligations, whether support in nature, property division, or hold-harmless, provided that they were incurred in the course of a divorce or separation or es-

---

"ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses") (internal quotation marks omitted).

**32.** Eloisa's Brief at 4–5.

**33.** § 523(a)(15).

**34.** *See In re Crosswhite,* 148 F.3d 879, 886–7 (7th Cir.1998).

**35.** 11 U.S.C. § 523(a)(15) (1995).

**36.** *See Berse v. Langman (In re Langman),* 465 B.R. 395, 405 (Bankr.D.N.J.2012) (noting expanded applicability of § 523(a)(15); elimination of these defenses was intended to reflect Congress' strong policy in favor of protecting ex-spouses and children and to cover any matrimonial debts that should not justifiably be discharged).

tablished in connection with a separation agreement, divorce decree, or other order of a court of record or a determination made in accordance with state or territorial law by a governmental unit.[37]

The result in this case is entirely consistent with Congressional intent as expressed in the current version of § 523(a)(15).

Finally, Eloisa argues that § 523(a)(15) should not be indiscriminately applied to any debt that is merely identified with the divorce proceedings. Instead, she claims that the Debt is a new obligation that did not exist at the time of the divorce and was not contemplated by the parties at that time. But the Divorce Decree provided for the termination of spousal support in the event of Eloisa's subsequent marriage or cohabitation.[38] When he discovered Eloisa's cohabitation, Matthew moved to terminate his spousal support obligation and to recover any support he had overpaid. The Virginia court entered judgment against Eloisa for repayment of the overpaid support. Not only did the Debt arise in connection with a divorce decree, it was imposed by "an order of a court of record" as § 523(a)(15) requires.

We conclude the bankruptcy court correctly determined that the plain language of § 523(a)(15) was broad enough to encompass the Debt. We affirm the bankruptcy court's conclusion that Eloisa's debt to Matthew is excepted from her discharge by § 523(a)(15).

## C. The fee-shifting provisions of the Marital Settlement Agreement ("MSA") do not support Matthew's request for attorneys' fees from this court or the bankruptcy court.

▮▮▮ Matthew contends that he should receive attorneys' fees and costs for prosecuting the adversary proceeding below as well as this appeal, and that those fees and costs should be excepted from discharge because the MSA provided for attorneys' fees in connection with the successful enforcement of any provision in it.[39] We conclude that the fee-shifting provisions in the MSA provide no basis for such an award being made either by us or the bankruptcy court.

▮▮▮ We have previously held that where state law or a fee-shifting agreement so provides, the party in a § 523(a)(5) or § 523(a)(15) action who succeeds in proving an exception to discharge may be awarded his or her fees by the bankruptcy court.[40] Other courts that have considered the question have reached the same conclusion.[41] In the absence of an agreement, however, no bankruptcy statute or rule awards fees to a creditor who successfully excepts a debt from discharge. This conclusion is buttressed by the fact that one subsection of § 523— § 523(d)—expressly allows attorneys' fees

---

37. Hon. William Houston Brown & Lawrence R. Ahern III, 2005 *Bankruptcy Reform Legislation With Analysis 2d* § 7:42 (2006).

38. Divorce Decree at 3, *in* App. 62 ("Defendant's spousal support obligation shall be ... governed by the terms of § 20–109 of the 1950 Code of Virginia [terminating support when the recipient is shown to be cohabitating with another.]").

39. MSA at 21, ¶¶ 25, 26, and 27–28, ¶ 45, *in* App. at 102, 108–09.

40. *See In re Busch,* 369 B.R. 614, 624–27 (10th Cir. BAP 2007).

41. *See Chance v. White (In re White),* 265 B.R. 547, 560 (Bankr.N.D.Tex.2001) and *Colbert v. Colbert (In re Colbert),* 185 B.R. 247, 249–250 (Bankr.M.D.Tenn.1995) (both holding that attorneys' fees not available in bankruptcy court where there is no provision in the property settlement agreement to shift them).

to a debtor who successfully defends a proceeding to except a consumer debt from discharge if the creditor's position was not substantially justified.[42] In addition, the parties have not cited this court to any state statute that would allow the fees. Accordingly, absent provisions in the MSA that would support the awarding of attorneys' fees by the bankruptcy court or this court, Matthew cannot be granted them here.

The MSA contains three separate fee-shifting provisions. Paragraph 25 is entitled "Legal Fees and Costs." Paragraph 25(a) makes each party responsible for their own fees incurred in entering into the agreement and in the divorce case, except as expressly provided. Paragraph 25(b) provides that the court that incorporates the agreement into a court order "shall retain all jurisdiction and authority it would otherwise have to award attorneys' fees and costs in any proceeding initiated after the entry of the parties' Final Decree of Divorce (e.g. support modification proceedings)."[43] This paragraph supports the Virginia court's award of attorneys' fees to Matthew in the overpayment case as well as in subsequent domestic court proceedings.

Paragraph 26, "Enforcement," says that if one party incurs expenses in successfully enforcing "any of the provisions of this Agreement," the counter-party will pay all reasonable fees and expenses that the enforcing party incurs.[44] Similarly, any expense incurred by a party in the successful defense of a provision of the MSA is to be reimbursed by the party seeking to enforce compliance.

Finally, in paragraph 45, "Bankruptcy," the parties attempted to inoculate their respective obligations against being discharged in bankruptcy by stipulating that each of those obligations were "in the nature of alimony and/or support." They also attempted to characterize any obligation that was not support as a nondischargeable property settlement under then § 523(a)(15). In a separate paragraph, they agreed that "[i]n the event a party to this Agreement files for bankruptcy, the creditor spouse shall be entitled to his or her reasonable attorney's fees and costs incurred in protections [sic] *his or her rights as provided by this Agreement.*"[45]

But the payment and repayment of spousal support is not provided for in the MSA. The only reference to spousal support in the MSA is found in paragraph 6, "Spousal Support and Maintenance," which states, "[t]he issue of spousal support and maintenance shall be presented to the Fairfax County Circuit Court for adjudication on Tuesday, July 12, 2005 ... and the jurisdiction of the Court to hear and determine this issue is hereby reserved."[46] Nothing else in the MSA imposes any obligation in connection with spousal support on either party. Thus the payment or repayment of support is not among Matthew's "rights as provided by this Agreement." Paragraphs 26 and 45 only provide for Matthew to receive fees for vindicating "rights as provided by this Agreement." Although he might be enti-

---

42. *See In re Colbert,* 185 B.R. at 248 (footnote omitted) ("Under the well-established principle of statutory interpretation *expressio unius est exclusio alterius,* the inclusion of § 523(d) indicates a congressional intent that each party bear his or her own litigation costs in all other dischargeability actions.").

43. MSA at 21, ¶ 25(b), *in* App. at 102.

44. *Id.* at 21, ¶ 26, *in* App. at 102.

45. *Id.* at 27, ¶ 45, *in* App. at 108–09 (emphasis added).

46. *Id.,* at 2 ¶ 6, *in* App. at 83.

tled to seek and receive attorneys' fees in the Virginia courts under ¶ 25(b) or applicable non-bankruptcy law, neither we nor the bankruptcy court can grant such fees for successfully excepting the overpayment of spousal support from discharge based on either of those provisions.

## IV. Conclusion

We conclude that the bankruptcy court correctly determined that § 523(a)(5) requires that the debt be in the nature of support with respect to the party seeking to have the debt excepted from discharge. Likewise, the bankruptcy court correctly interpreted § 523(a)(15) as not requiring the creditor-spouse to be the dependent spouse. Finally, we conclude that the fee-shifting provisions in the MSA provide no basis for us or the bankruptcy court to award Matthew attorneys' fees incurred in the prosecution of the adversary proceeding from which this appeal arises or on appeal. Accordingly, we AFFIRM both the bankruptcy court's dismissal of Matthew's § 523(a)(5) claim and its determination that the Debt is excepted from Eloisa's discharge by § 523(a)(15).