Filed 11/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of PHILIP and CHARLENE YU STEELE VAUGHN. | 2d Civil No. B286871 (Super. Ct. No. 16FL-00726) (Santa Barbara County) |
| PHILIP VAUGHN,<br><br>    Appellant,<br><br>v.<br><br>CHARLENE YU STEELE VAUGHN,<br><br>    Respondent. | |

Philip Vaughn appeals from the trial court's postjudgment order concluding that his outstanding debt on a loan from a family partnership—in which his ex-wife, Charlene Yu Steele Vaughn, is a limited partner—was nondischargeable in bankruptcy.  (Code Civ. Proc., § 904.1, subd. (a)(2).)  Philip[1] contends the court incorrectly determined that his debt was

---

[1] We use the parties' first names for clarity.

exempt from discharge pursuant to section 523(a)(15) of title 11 of the United States Code.[2]  We hold that when the nature of a debt is such that its discharge will directly and adversely impact the finances of the debtor's spouse or former spouse, it is nondischargeable in bankruptcy, even if it is not directly payable to the spouse.  We therefore affirm.

FACTUAL AND PROCEDURAL HISTORY

In May 1995, Charlene's parents created CJPM Family Partnership, Ltd.  Charlene's parents are the general partners of CJPM.  They have "full, exclusive, and complete authority and discretion in the management and control of the business of the [p]artnership."  Charlene, her parents, and her three siblings are limited partners of CJPM.  No limited partner is liable for the "debts, liabilities, contracts, or any other obligations of the [p]artnership."

Each partner has a capital account in the partnership.  Charlene's account contains 20 percent of the partnership's total capital.  The amount of money distributed to a partner, the partner's share of partnership losses, and the amount of the partner's liabilities that are assumed by the partnership all decrease a partner's capital account.

Philip and Charlene married in June 1995.  Ten years later, CJPM made three loans to Philip totaling $150,000.  The promissory notes name Philip as the borrower and CJPM as the note holder.  The loans were credited against Charlene's partnership interest.  Her capital account was reduced by $150,000.

---

[2] All undesignated statutory references are to title 11 of the United States Code.

2

In 2009, Philip executed a new promissory note for $150,000, restating the total amount he had borrowed from CJPM. The note provided for 8 percent annual interest. Interest began to accrue from the date of the notes that were executed in 2005.

Philip did not repay his debt to CJPM. He and Charlene divorced in 2011. Section 9.3 of their stipulated dissolution judgment awarded Charlene "[a]ll rights, title[,] and interest to any community interest that may exist in [CJPM]." Section 10.1 assigned to Philip, as his separate obligation, his debt to CJPM. It also required Philip to "indemnify and hold [Charlene] harmless from" that debt.

Section 11.0 of the judgment is a separate warranty clause:

> [E]ach party has released the other from any and all liabilities, debts[,] or obligations that have been or will be incurred[,] and each party shall indemnify and hold the other harmless therefrom. If any claim, action[,] or proceeding hereafter shall be brought seeking to hold the other party liable on account of any such debt, liability[,] or obligation, the party who incurred such debt, liability[,] or obligation will[,] at his or her sole expense, defend the other party against any such claim or demand or threat thereof . . . .

Later that year, Philip filed for Chapter 7 bankruptcy. All of his debts, including his loan from CJPM, were discharged.

3

In 2015, Charlene moved to reopen bankruptcy proceedings to obtain a ruling that Philip's debt to CJPM was nondischargeable. The bankruptcy court declined to reopen the case. It did not decide whether the debt was dischargeable.

Charlene moved to recover Philip's CJPM debt in the trial court. Charlene testified that the money loaned to Philip came from her share of CJPM. She said Philip acknowledged that he knew the loan came from her share. She also said she is responsible for the loan to Philip, as implied by the CJPM partnership agreement. Her father confirmed this. Charlene's capital account in the partnership was reduced by the amount of the unpaid loan.

The trial court determined that Philip's CJPM debt was nondischargeable. It concluded that the debt did not have to be directly payable to Charlene to fall under the exemption set forth in section 523(a)(15). The court calculated that Philip owes Charlene $345,963, representing $150,000 principal plus accrued interest.

DISCUSSION

A Chapter 7 bankruptcy generally discharges all of an individual's debts, but there are exceptions. (*In re Hicks* (Bankr. D.Mass. 2005) 331 B.R. 18, 22; see § 727(a), (b).) Debts excepted from discharge are limited to those "plainly expressed" in federal bankruptcy statutes. (*Bullock v. BankChampaign, N.A.* (2013) 569 U.S. 267, 275-276.) They include debts for "domestic support obligation[s]" (§ 523(a)(5)) and those "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that [are] incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of

4

record" (§ 523(a)(15)).  State courts have concurrent jurisdiction to decide whether a debt is dischargeable under these provisions. (*In re Doll* (Bankr. N.D.Ohio 2018) 585 B.R. 446, 461, fn. 7; see 28 U.S.C. § 1334(b).)

Whether Philip's debt to CJPM is nondischargeable presents a mixed question of law and fact.  (*Miller v. United States* (9th Cir. 2004) 363 F.3d 999, 1003-1004.)  The interpretation of section 523(a)(15) is a question of law for our independent review.  (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.)  Our goal is to give effect to Congress's intent.  (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 215.)  We first examine the words of the statute, giving them their plain, commonsense meaning.  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  We follow the statute's plain meaning unless doing so would lead to absurd results Congress did not intend.  (*Ibid.*)

If section 523(a)(15)'s meaning is unclear, we examine its legislative history to determine Congress's intent. (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803.)  We strive to harmonize provisions relating to the same subject matter (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659), bearing in mind that "[w]here a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, [Congress] is presumed to have adopted that" interpretation in the more recently enacted statute (*People v. Harrison* (1989) 48 Cal.3d 321, 329 (*Harrison*)).  We also "consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the

5

consequences that will flow from a particular interpretation.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)

We review the trial court's resolution of disputed facts and inferences for substantial evidence. (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 60.)

*Philip's debt to CJPM is a debt to a former spouse*

Philip first contends section 523(a)(15)'s meaning is "clear and unambiguous," and requires that his debt be payable directly to Charlene to be nondischargeable. (*In re Reinhardt* (Bankr. M.D.Fla. 2012) 478 B.R. 455, 457 (*Reinhardt*); see also *In re Gunness* (Bankr. 9th Cir. 2014) 505 B.R. 1, 7-8 (*Gunness*) [section 523(a)(15) should be interpreted narrowly to afford debtors a "fresh start"].) But most courts have determined that section 523(a)(15)'s language is ambiguous, and should be interpreted "broadly and liberally . . . to encourage payment of familial obligations rather than to give a debtor a fresh financial start." (*In re Reynolds* (Bankr. M.D.Fla. 2016) 546 B.R. 232, 237; see also *id.* at p. 236, fn. 19 [compiling cases].) We agree with the latter line of cases.

Section 523(a)(15)'s legislative history supports a broad interpretation. For over a century, Congress has sought to protect a debtor's spouse and children in bankruptcy proceedings. (*Beale v. Kurtz* (Bankr. S.D.Ind. 2008) 381 B.R. 727, 731; see *Wetmore v. Markoe* (1904) 196 U.S. 68, 77 [bankruptcy law should not be "an instrument to deprive [a] dependent [spouse] and children of the support and maintenance due [to] them"].) It enacted section 523(a)(15) in 1994 because it recognized "that the economic protection of dependent spouses and children under state law [could] no longer [be] accomplished solely through the traditional mechanism of support and alimony payments." (*In re*

6

*Golio* (Bankr. E.D.N.Y. 2008) 393 B.R. 56, 61.) The enactment of this section evidenced Congress's "intent that 'a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.' [Citation.]" (*In re Proyect* (Bankr. N.D.Ga. 2013) 503 B.R. 765, 773.)

As enacted, section 523(a)(15) worked in conjunction with section 523(a)(5). (*In re Cordia* (Bankr. N.D.Ohio 2001) 280 B.R. 138, 146.) Former section 523(a)(5) exempted from discharge any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement [or] divorce decree." Former section 523(a)(15) exempted from discharge any debt, other than one described in section 523(a)(5), "that [was] incurred by the debtor in the course of a divorce or separation." Section 523(a)(15) thus enlarged the scope of nondischargeable debts to any debt incurred in the course of a divorce or separation, unless the debtor was unable to repay the debt or the benefit of discharging the debt outweighed the benefit to the spouse or child. Together, sections 523(a)(5) and 523(a)(15) "demonstrate[d] a policy against discharging . . . essentially any debt arising out of the demise of a marital relationship." (*In re Nugent* (Bankr. S.D.Tex. 2012) 484 B.R. 671, 684.)

In 2005, Congress enacted the Bankruptcy Abuse Protection and Consumer Protection Act (BAPCPA). (*In re Wodark* (Bankr. 10th Cir. 2010) 425 B.R. 834, 837 (*Wodark*).) "One of Congress's overarching themes in enacting BAPCPA was to redefine and reinforce the ability of [nondebtor] former spouses to recover both support and property settlement obligations from debtors in bankruptcy." (*Id.* at p. 838.) It sought to accomplish this goal by eliminating the provisions of section 523(a)(15) that

7

allowed a debtor to discharge a debt if the debtor was unable to repay it or the benefit to the debtor outweighed that to the nondebtor spouse or child.  (*Gunness*, *supra*, 505 B.R. at p. 5.) The elimination of these provisions shows Congress's intent to "broaden the scope of nondischargeable marital debt by abandoning a need-driven analysis of the dischargeability of non-support marital debt."  (*In re Taylor* (Bankr. 10th Cir. 2012) 478 B.R. 419, 428.)

BAPCPA also amended sections 523(a)(5) and 523(a)(15).  Section 523(a)(5) now exempts from discharge any debt "for a domestic support obligation."  Section 523(a)(15) now exempts from discharge any debt "to a spouse, former spouse, or child of the debtor and not of the kind described in [section 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation."

The elimination of the words "to a spouse, former spouse, or child" from section 523(a)(5) necessitated their addition to section 523(a)(15), given the latter's reference to the former.  (*Wodark*, *supra*, 425 B.R. at p. 838.)  Thus, rather than narrowing the scope of debts exempt from discharge pursuant to section 523(a)(15), as Philip maintains, BAPCPA restated them.  (*Ibid.*)  It did not add a "direct pay" requirement.  (*In re Francis* (Bankr. 9th Cir. 2014) 505 B.R. 914, 919-920 (*Francis*); see also *In re Prensky* (Bankr. D.N.J. 2009) 416 B.R. 406, 410 [BAPCPA was "intended to increase the scope of the discharge exception," not limit its protection to spouses, former spouses, and children].)

Prior judicial interpretations of section 523(a)(5) reinforce our conclusion.  Before BAPCPA's enactment in 2005, the phrase "to a spouse, former spouse, or child" was part of section 523(a)(5).  Most courts broadly interpreted that phrase "to

8

provide an exception from discharge for certain debts to third parties . . . when the debts were incurred . . . in furtherance of domestic support obligations." (*In re Langman* (Bankr. D.N.J. 2012) 465 B.R. 395, 406; see also *In re Chang* (9th Cir. 1998) 163 F.3d 1138, 1140-1142 [collecting cases].) What mattered, the courts said, was "the nature of the debt rather than the identity of the payee" (*In re Miller* (10th Cir. 1995) 55 F.3d 1487, 1490)—i.e., whether "discharge of the debt would have adversely impacted the finances" of the debtor's spouse, former spouse, or child (*Gunness*, *supra*, 505 B.R. at p. 6).

We presume Congress was aware of and adopted this interpretation when it enacted BAPCPA. (*Harrison*, *supra*, 48 Cal.3d at p. 329.) It would be "strange indeed" if Congress intended a different statutory interpretation when it moved the phrase "to a spouse, former spouse, or child" to section 523(a)(15). (*In re Notary* (Bankr. D.Colo. 2016) 547 B.R. 411, 421-422.) We accordingly hold that a debt is nondischargeable pursuant to section 523(a)(15) if the nature of the debt is such that its discharge would directly and adversely impact the finances of the debtor's spouse or former spouse. The identity of the payee is not determinative.

Here, the trial court correctly determined that Philip's debt to CJPM is a debt to a former spouse. Philip's loan came from Charlene's share of CJPM. The debt was credited against her partnership interest, and her capital account was reduced accordingly. Philip's failure to repay the debt adversely affects Charlene's finances. The debt is therefore "to a former spouse" pursuant to section 523(a)(15).

Philip's concern that our interpretation of section 523(a)(15) will lead to inequitable results is misplaced. In

9

*Reinhardt, supra*, 478 B.R. 455, 457, on which Philip relies, the bankruptcy court refused to deem a debtor husband's mortgage and credit card debts nondischargeable because doing so could be inequitable: The nondebtor wife could discharge her obligations on those debts in a future bankruptcy case, but the husband would remain liable based on the court's nondischargeability finding. Here, in contrast, there is no potential financial burden Charlene can stave off in a future proceeding; she was already damaged by the reduction in her CJPM capital account. *Reinhardt* is inapposite.

### *Philip's promise to repay his debt was incurred in connection with a divorce decree*

Philip next contends only his promise to indemnify and hold Charlene harmless for his debt to CJPM—and not his promise to repay that debt—was incorporated into the dissolution judgment and is thus nondischargeable. (*In re Brown* (Bankr. S.D.Ga. 2013) 488 B.R. 810, 813.) We disagree.

Section 10.1 of the dissolution judgment awarded to Philip, as his separate debt, the CJPM loan. The promissory note on that loan requires Philip to repay the $150,000 he borrowed. Philip's promise to repay his debt to CJPM was incorporated, by reference, into the dissolution judgment. (*Flynn v. Flynn* (1954) 42 Cal.2d 55, 59.) It was therefore incurred in connection with a divorce decree, and is nondischargeable. (*Francis, supra*, 505 B.R. at pp. 916, 921-922 [debtor husband's promise to pay debts assigned to him in divorce was nondischargeable]; see also *Wodark, supra*, 425 B.R. at pp. 838-839 [same]; *In re Burckhalter* (Bankr. D.Colo. 2008) 389 B.R. 185, 190 [same].)

The warranty clause in section 11.0 of the dissolution judgment also includes Philip's promise to repay the CJPM debt.

10

To "indemnify" a person is to "save [them] from a legal consequence of the conduct *of one of the parties*, or of some other person." (Civ. Code, § 2772, italics added.) It is "the obligation resting on one party to make good a loss or damage another party has incurred." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628 (*Roosmoor*).)

While indemnity usually relates to third party claims, it may also refer to direct liability. (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1024 (*Zalkind*).) Whether an indemnity agreement covers direct liability, third-party liability, or both, is a question of contract interpretation (*Rossmoor*, *supra*, 13 Cal.3d at p. 633) for our independent review (*Argonaut Ins. Co. v. Transport Indem. Co.* (1972) 6 Cal.3d 496, 502). Our goal is to determine the intent of the parties when they included the indemnification provision in the dissolution judgment. (*Zalkind*, at p. 1025.)

In section 11.0 of the dissolution judgment, Philip released Charlene "from *any and all* liabilities, debts[,] or obligations" that he had incurred, and "indemnif[ied] and [held her] harmless therefrom." (Italics added.) He also agreed to defend her against "*any* claim, action[,] or proceeding . . . seeking to hold [her] liable on account of any such debt, liability[,] or obligation." (Italics added.) The use of such broad language demonstrates the parties' intent that the warranty clause refer to both direct and third-party liability. (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1181.) Had they instead intended to narrow the clause to only cover third-party claims, they could have done so expressly. (*Zalkind*, *supra*, 194 Cal.App.4th at p. 1026.) Because they did not, the warranty clause requires Philip to indemnify Charlene for the

11

losses she suffered when he failed to pay his CJPM debt. That promise is nondischargeable.

*The statute of limitations does not bar Charlene's action*

Philip next contends that, even if his CJPM debt was nondischargeable, he cannot be forced to pay it because the statute of limitations has run. (See Code Civ. Proc., § 337 [four-year statute of limitations to enforce obligations in a promissory note].) He bases his contention on the assumption that CJPM would have to bring a claim against Charlene to recover Philip's unpaid debt, and Charlene would then have to bring a claim against him to recover her damages. But Charlene's right of recovery is based on the dissolution judgment, not an action to enforce the promissory note. The statute of limitations for the enforcement of a dissolution judgment is 10 years. (Code Civ. Proc., § 337.5, subd. (b); see *In re Marriage of Hanley* (1988) 199 Cal.App.3d 1109, 1121.)

*The trial court properly calculated the amount owed*

Finally, Philip contends Charlene is entitled to recover, at most, $150,000 because her capital account has not been charged interest. He cites no evidence in support of this contention. (*People v. Garza* (2005) 35 Cal.4th 866, 881 [party attacking judgment must affirmatively demonstrate error on appeal].) It is forfeited. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943.)

Even if it were not, Charlene seeks to enforce the dissolution judgment. The judgment incorporates Philip's promissory note. The note requires Philip to repay his CJPM loan at 8 percent annual interest. The trial court's calculation was correct.

12

DISPOSITION

The judgment is affirmed.  Charlene Yu Steele Vaughn shall recover costs on appeal.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


YEGAN, Acting P. J.


PERREN, J.

13

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

Law Office of Charles M. Oxton, Charles M. Oxton; Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar, for Appellant.

Jarrette & Walmsley, Robert R. Walmsley and Marlea F. Jarrette, for Respondent.